## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| DAVID LEE, KEVIN P. CASSIDY, EDWARD O'CONNOR and SCOTT CONNOR, | : |
| | : |
| Defendants. | : |

**No. 08-CV-09961 (GBD)**

**ECF FILED**

**ORAL ARGUMENT REQUESTED**

## DEFENDANT EDWARD O'CONNOR'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, <u>THE MOTION TO DISMISS THE COMPLAINT</u>

McCormick & O'Brien, LLP

Liam O'Brien
Marni Rae Robin
42 West 38th Street, Suite 701
New York, New York 10018
Tel: (212) 286-4471
Fax: (212) 504-9574

*Attorneys for Edward O'Connor*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT IN REPLY ............................................................................................... 2

A.  The Opposition Fails to Show that the Complaint has Adequately Pled the
Predicate Securities Fraud with the Requisite Particularity under Rule 9(b) ......... 2

1.  The Opposition Fails to Show that O'Connor Committed a Manipulative or
Deceptive Act in Furtherance of the Purported Scheme to Defraud ............... 2

2.  The Opposition Fails to Show that O'Connor Acted with Scienter.................. 7

B.  The Opposition Fails to Show that the Complaint has Adequately Pled the Claims
for Securities Fraud for Alleged Misstatements and Omissions in Optionable's
Public Filings and in the Sale of Stock to the NYMEX ......................................... 9

C.  The Opposition Fails to Show that the Complaint has Adequately Pled Aiding and
Abetting Liability Against O'Connor .................................................................. 10

CONCLUSION............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*In re IMAX Sec. Litig.,* 587 F.Supp.2d 471 (S.D.N.Y. 2008) ........................................ 8, 9

*In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.,* 553 F.Supp.2d 902 (S.D. Ohio, Eastern Div. 2008) ......................................................................................................... 2

*In re Parmalat Sec. Litig.,* 376 F.Supp.2d 472 (S.D.N.Y. 2005)....................................... 2

*Last Atlantis Capital LLC v. CBOE,* 455 F.Supp.2d 788 (N.D. Ill., East'n Div. 2006) ..... 4

*SEC v. Collins & Aikman Corp.,* 524 F.Supp.2d 477 (S.D.N.Y. 2007)............................. 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499 (2007).......... 8

*U.S. v. Finnerty,* 533 F.3d 143 (2d Cir. 2008) ............................................................. 5, 8

Defendant O'Connor, by and through his attorneys McCormick & O'Brien, LLP, hereby submits this reply brief ("Reply") in further support of the Motion to Dismiss the Complaint ("MTD") pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).[1]

## PRELIMINARY STATEMENT

In its opposition brief ("Opposition" or "Opp."), the SEC failed to address many arguments posited by O'Connor in the MTD (e.g., the failure to plead adequately the "in connection with" the purchase or sale of a security element for securities fraud pursuant to Exchange Act § 10(b) and Rule 10b-5 – *see* MTD at 18-19). Therefore, such contentions should be deemed conceded by the SEC. Rather than reiterate all the points the SEC failed to address this Reply shall address only the arguments raised by the SEC in its Opposition.

In addition, contrary to Plaintiff's assertions in its Opposition (at 8), it is not "clear from the face of the Complaint" that the alleged violations set forth in Plaintiff's First Claim for Relief ("First Claim") as against O'Connor pertain only to Rule 10b-5 (a) and (c) and not to subsection (b). *See* Cpt. ¶¶ 49-50. The Complaint is unclear which sections of Rule 10b-5, if any, do not apply to O'Connor. In light of the SEC's position that the First Claim does not include a claim for violations of Rule 10b-5 subsection (b) (Opp. at 8), O'Connor respectfully requests, regardless of any other determination by the Court on his MTD, that the Court dismiss against him the claim of violation of SEC Rule 10b-5(b) seemingly contained in the First Claim of the Complaint.

---

[1] All abbreviations for terms identified in the MTD are incorporated herein by reference. Furthermore, a typographical error exists in the MTD at p. 8, which instead should read: "4. Section 13(b)(5) of the Exchange Act and Rule 13b2-1 promulgated thereunder (causing the falsification of books and records of Optionable)."

**ARGUMENT IN REPLY**

**A.    The Opposition Fails to Show that the Complaint has Adequately Pled the Predicate Securities Fraud with the Requisite Particularity under Rule 9(b)**

1.    The Opposition Fails to Show that O'Connor Committed a Manipulative or Deceptive Act in Furtherance of the Purported Scheme to Defraud

As stated above, in its Opposition, Plaintiff has confined its predicate securities fraud claim against O'Connor concerning the purported scheme to defraud BMO (contained in the First Claim) to allege violations of Exchange Act § 10(b) and Rule 10b-5(a) and (c). Although correctly stating its burden for such claims, Plaintiff fails to show that the Complaint adequately alleged that O'Connor committed a manipulative or deceptive act in furtherance of the alleged scheme to defraud with scienter. *See* Opp. at 10. Pursuant to Rule 9(b), Plaintiff "must <u>specify</u> what deceptive or manipulative acts were performed, which defendants performed them [and] when the acts were performed...." *Id.* (emphasis added). "[T]o be liable [under Rule 10b-5(a) and (c)], a defendant must engage in conduct that is in itself deceptive, not simply engage in non-deceptive conduct that supports an overall deceptive scheme." *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.,* 553 F.Supp.2d 902 (S.D. Ohio, Eastern Div. 2008), citing *In re Parmalat Sec. Litig.,* 376 F.Supp.2d 472, 502-03 (S.D.N.Y. 2005). As stated in the MTD, "[p]articipation in a scheme can [] be sufficient for liability under section 10(b) only if that participation took the form of actions or statements that were independently deceptive or fraudulent." *SEC v. Collins & Aikman Corp.,* 524 F.Supp.2d 477, 486 (S.D.N.Y. 2007); MTD at 16. As is demonstrated below, the Complaint fails to allege facts with sufficient particularity that O'Connor engaged in objectively deceptive acts in furtherance of the purportedly fraudulent scheme.

2

Contrary to the SEC's assertions, the Complaint does not "describe[] how in 2003 O'Connor and the other defendants colluded to deceive BMO's back office by providing it with twice-monthly quotes consisting solely of Lee's own quotes (Cmplt. ¶ 24)." Opp. at 10 (emphasis added). To state that "Cassidy, O'Connor and Connor colluded with Lee to inflate the value of Lee's trading positions over four years" (Cpt. ¶ 24), is simply a conclusory statement, not a factual allegation describing some collusive act between the Optionable Defendants, specifically O'Connor, and Lee with requisite specificity pursuant to Rule 9(b). As stated in the MTD, legal conclusions, deductions or opinions couched as factual allegations are not required to be afforded a presumption of truthfulness. MTD at 8. Moreover, in paragraph 24, the Complaint does no more than provide a summary of the purported scheme between Optionable and Lee that began in 2003.

Nor does the Complaint allege facts relating to O'Connor's "knowing participation" in the purported fraud on BMO. *See* Opp. at 10. As stated in the MTD (at 4), the Complaint makes three statements concerning O'Connor that Plaintiff argues are sufficient to demonstrate O'Connor's objectively deceptive conduct in furtherance of the purported scheme against BMO. *See* Opp. at 10-11. The first statement is: "O'Connor handled the mechanics of the "u-turn" process for a period of time in 2005…." (Cpt. ¶ 24). On its face, this purported "allegation" is a vague and conclusory statement involving a non-specific period of time. What remains unknown is how did O'Connor allegedly "handle" the mechanics of the "u-turn" process; i.e., what exactly did he do, and how did he do it? When did he do it (whatever "it" is); i.e., was it for one month, one day, or one moment in 2005? "To satisfy the particularity requirement [for a Rule 10b-5

claim], plaintiffs must allege the who, what, when, where and how: the first paragraph of any newspaper story." *Last Atlantis Capital LLC v. CBOE,* 455 F.Supp.2d 788, 793 (N.D. Ill., East'n Div. 2006). The lack of specificity of this so-called "factual allegation" against O'Connor is glaring when compared with the extremely detailed allegations made against Cassidy (Cpt. ¶ 25) and S. Connor (Cpt. ¶¶ 26–27) concerning each of their alleged conduct in connection with the "u-turn" process with Lee. Because no actual facts are alleged here, there is no way to determine whether O'Connor's alleged conduct is objectively or independently deceptive, and not just unwitting participation in the "fraudulent scheme," if it even existed.

The second statement of O'Connor's purported participation is: "O'Connor gave [S.] Connor the names of the BMO personnel to whom [S.] Connor should send the quotes." Cpt. ¶ 26. While this allegation may appear to be stated with some specificity, it does not describe conduct that is deceptive on its face. While the SEC may presume that O'Connor knows the exact nature of the quotes S. Connor is sending to BMO, the Complaint does not state so. Such allegation easily connotes innocent conduct by O'Connor. The third statement concerning O'Connor's alleged participation is equivocal and vague: "[i]n some cases, Cassidy or O'Connor would also review and approve [S.] Connor's work" (referring to S. Connor's retyping of Lee's quotes to be sent to BMO) (Cpt. ¶ 27). This allegation is unclear as to who reviewed S. Connor's work, and if O'Connor, when he did so or how he did so (i.e., what did he do exactly? what did he say to S. Connor?), or even if he knew what the "work" he was reviewing represented. The conduct described at best connotes a review for typographical errors – facially innocent conduct. Thus, it is clear that the allegations contained in the Complaint (and not the

arguments made by the SEC in its Opposition construing what the Complaint means to say) do not demonstrate any objectively or independently deceptive or fraudulent conduct by O'Connor. Nothing in the Opposition cures such patent deficiencies.

The claims against O'Connor here do not even rise to the level of allegations in *U.S. v. Finnerty,* 533 F.3d 143 (2d Cir. 2008). In *Finnerty*, the Government charged the defendant, an NYSE specialist, with engaging in a fraudulent and deceptive course of conduct in violation of Exchange Act § 10(b) and Rule 10b-5 for "interpositioning" in trades between counterparties for a profit without disclosure of same to the customers, rather than simply matching the counterparties to a trade directly. The Second Circuit upheld the District Court's determination that there was <u>no securities fraud</u> where there was no evidence that the defendant made any misstatements to NYSE customers or otherwise conveyed an impression that was misleading. "Broad as the concept of "deception" may be, it irreducibly entails some <u>act that gives the victim a false impression</u>." *Id.* at 148 (emphasis added). Accordingly, despite the SEC's claims of an overall fraudulent scheme, without pleading any deceptive conduct with particularity by O'Connor, the claims against him must be dismissed.

Moreover, in the Opposition, the SEC claims that "the Complaint adequately alleges that O'Connor's involvement in the fraud enabled Lee to expand the size of his book and increase the magnitude of the fraud," referencing a "summary" paragraph of the Complaint which is stated entirely in conclusory terms (Cpt. ¶ 22). Opp. at 11. Such summary paragraph in the Complaint does nothing to refute O'Connor's argument in the MTD that no facts have been pled against O'Connor to support an inference that the valuations/quotes O'Connor purportedly provided to BMO's back office were false or

5

outside the range of market prices for such positions at the time such valuations/quotes were allegedly made. *See* MTD at 11-12. Plaintiff makes an incredibly lengthy inferential leap by attempting to tie O'Connor's non-deceptive conduct during some non-specific period in 2005 to restatements in earnings filed by BMO for the year 2006 and the first quarter of 2007. *See* MTD at 12. Other than in conclusory terms, there simply are no allegations creating a nexus between O'Connor's purported conduct and BMO's restatement of its financial reports.

Furthermore, while alleging that the valuations allegedly verified by Optionable were millions of dollars greater than comparison valuations provided by Totem, the Complaint does not identify how the Totem valuations, beginning in the late Summer of 1996, were conducted. *See* Cpt. ¶ 29. It is unclear whether Totem evaluated the Optionable valuations as of the date of the quotes allegedly were provided to BMO by Optionable (e.g., as of a date in 2005 for a purported quote from O'Connor), or whether, more likely, Totem provided its valuations of Lee's book as of some date in the late Summer of 1996, at a time when, according to the Complaint (¶ 17), the market for the evaluated options deteriorated. If the latter, such comparative valuations were unfairly made, and more importantly, do <u>not</u> prove that the valuations or quotes purportedly provided by the Optionable Defendants, specifically O'Connor, were false or inaccurate at the time they were made.

Additionally, Plaintiff's attempt to convert the allegation that "Lee initially employed the scheme to "smooth" the appearance of his book's day-to-day performance by inflating his marks when his book had performed poorly" (Cpt. ¶ 22) into a demonstration of "specific[] alleg[ations] that O'Connor knew the marks were false"

strains credulity. *See* Opp. at 11-12.  Further, the SEC's argument that "the fraud at the heart of the scheme was the defendants' manipulation of information that conveyed the false impression to BMO that BMO was obtaining independent third party valuations, when in fact[,] it was not" (Opp. at 12) is illogical and undercuts all the claims made in the Complaint. Indeed, BMO was not deceived, and could not have been deceived, if the valuations or quotes provided by the Optionable Defendants, specifically O'Connor, were <u>accurate</u>, regardless of where they originated. Perhaps that is why the Complaint fails to identify a single inaccurate or false valuation purportedly provided by O'Connor (or any other of the Optionable Defendants) – because none exist!! The Complaint has further alleged that a fraudulent scheme caused harm to BMO and the investing public because it resulted in misrepresentations made in BMO's financial reports (Cpt. ¶ 1). If the valuations purportedly provided by O'Connor were not the cause of the misstated financial reports, then there is no basis for this claim.

This Court should not countenance overzealous injunctive actions brought by federal regulators against innocent parties.  Based upon the conduct alleged by the SEC, O'Connor is, at worst, an unwitting and innocent participant in a purported fraud, if one actually existed.

2.      The Opposition Fails to Show that O'Connor Acted with Scienter

Plaintiff also fails to demonstrate that scienter is sufficiently pled against O'Connor in the Complaint for Rule 9(b) purposes. Plaintiff argues that the Complaint's failure to allege specific facts that O'Connor (1) was aware that Lee allegedly had been inflating his marks, (2) was informed that BMO expected O'Connor to seek independent quotes for the positions, or (3) communicated to BMO that his valuations were based on independent quotes is "form over substance." Opp. at 13. Plaintiff suggests that because

of a disclosure made in Optionable's public filings, O'Connor, as an officer of Optionable, should have been aware of <u>BMO's understanding</u> of the terms of an arrangement made with Lee to which <u>O'Connor was not a party nor had been advised by BMO of same</u>. *Id.* To the contrary, it is <u>not</u> obvious from the Complaint that O'Connor understood anything other than what he had been instructed: specifically, to review the valuations provided by Lee and to correct only those quotes that O'Connor knew or had reason to know were inaccurate or outside the range of market prices for such security, before sending them back to BMO. Therefore, if the quotes sent to O'Connor were within the range of market prices for such security, there were no changes to be made. This is not only a <u>plausible explanation</u> of what transpired, but also provides an innocent interpretation to the unspecific allegations made in the Complaint concerning O'Connor's conduct. "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *In re IMAX Sec. Litig.,* 587 F.Supp.2d 471, 479 (S.D.N.Y. 2008), quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2510 (2007).

Because the SEC addresses O'Connor's scienter from the point of view of BMO, the reasoning of the Second Circuit in *Finnerty* applies:

> Some customers may have understood that the NYSE rules prohibit specialists from interpositioning, and that the rules amount to an assurance … that interpositioning will not occur. As a consequence, some customers may have expected that Finnerty would not engage in the practice. <u>But unless their understanding was based on a statement or conduct by Finnerty, he did not commit a primary violation of § 10(b)</u> – the only offense with which he was charged.

*Finnerty,* 533 F.3d at 150 (emphasis added). The same holds true for O'Connor.

Moreover, the SEC's argument - that O'Connor's sale of his Optionable stock to NYMEX two years after his alleged misconduct - fails to adequately demonstrate O'Connor's motive or a concrete benefit from his alleged misconduct. *See* Opp. at 13-14. It is almost farcical to suggest that O'Connor engaged in the sparse conduct alleged in the Complaint with a view that two years later he would be able to benefit from such conduct from a sale of his stock in 2007 – a sale that was not contemplated or even possible two years earlier. *See In re IMAX,* 587 F.Supp.2d at 480 ("While we would hesitate to find the allegations of motive sufficient even if the complaint had alleged that an acquisition was not just probable, but imminent, the fact that IMAX was merely in the exploratory phase of pursuing an acquisition only highlights the speculative and conclusory nature of any concrete benefit that could have been realized by [the defendants]").

**B.     The Opposition Fails to Show that the Complaint has Adequately Pled the Claims for Securities Fraud for Alleged Misstatements and Omissions in Optionable's Public Filings and in the Sale of Stock to the NYMEX**

As demonstrated above, the SEC has failed to adequately plead claims of fraud, including the scienter element, against O'Connor with requisite particularity under Rule 9(b). Accordingly, the remaining claims in the Complaint that are predicated upon the existence of such adequately pled allegations, including the claims concerning alleged misstatements and/or omissions in connection with Optionable's public filings and the sale of some of O'Connor's stock to the NYMEX contained in the Second Claim for Relief (the "Second Claim"), should be dismissed.

The Opposition responds dismissively to O'Connor's arguments rather than acknowledge that it can not adequately address his arguments concerning the Second Claim. *See* MTD at 19-23 and Opp. at 16. Moreover, the SEC glossed over the undisputed fact that the SEC itself agreed with BMO's conclusions that the restatements

made in connection with its earnings were **immaterial**. *See* MTD at 13-15. Materiality is an element that must be shown in connection with claims of securities fraud under Exchange Act § 10(b) and Rule 10b-5(b) as well as Securities Act § 17(a). *Id.* at 22. While materiality may *generally* be a question of fact, in this instance, it is clear that the restatements (and therefore, the misstatements of BMO's earlier financial reports) are immaterial as a <u>matter of law</u>.

Also notable is the SEC's acknowledgement that O'Connor could not be held liable for any alleged misstatements made in Optionable's public filings <u>unless</u> he <u>knew</u> they were false. Opp. at 16, fn. 7. Because the Complaint is <u>devoid</u> of any allegation that O'Connor knew that the representations made in Optionable's public filings were false -- even the Opposition fails to identify such an allegation – by Plaintiff's own admission, the foregoing claims against O'Connor in the Second Claim have not been pled with requisite specificity, and for these additional reasons, must be dismissed.

**C.      The Opposition Fails to Show that the Complaint has Adequately Pled Aiding and Abetting Liability Against O'Connor**

The SEC has failed to address <u>any</u> of the substantive arguments and reasoning set forth in the MTD (at 23-24) with respect to aiding and abetting liability. Therefore, the SEC has conceded these issues, and the claims against O'Connor for same should be dismissed, accordingly.

<u>**CONCLUSION**</u>

For the foregoing reasons, in conjunction with those set forth in O'Connor's MTD, the Complaint in this action should be dismissed with prejudice as against O'Connor. As Plaintiff also has not requested an opportunity to replead any allegations against O'Connor, Plaintiff should not be granted leave to do so by this Court.

Dated: New York, New York
       June 2, 2009

                                        **McCormick & O'Brien, LLP**

                                        By: _____/s/ Liam O'Brien_____
                                        Liam O'Brien (LO-3930)
                                        Marni Rae Robin (MR-3461)
                                        42 West 38th Street, 7th Floor
                                        New York, New York 10018
                                        Tel:  212-286-4471
                                        Fax:  212-504-9574
                                        lobrien@mcoblaw.com
                                        mrobin@mcoblaw.com

                                        *Attorneys for Defendant*
                                        *Edward O'Connor*

11

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 2, 2009 a true and correct copy of the Defendant Edward O'Connor's Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of the Motion to Dismiss the Complaint was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on June 2, 2009.


                                 /s/ Liam O'Brien