UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Securities and Exchange Commission, | : |
| Plaintiff, | : |
|  | : No. 08-CV-09961 (GBD) (JLC) |
| -against- | : ECF FILED |
|  | : ORAL ARGUMENT REQUESTED |
| David Lee, Kevin P. Cassidy, Edward O'Connor, Scott Connor, and Optionable, Inc. | : |
| Defendants. | : |

**DEFENDANT EDWARD O'CONNOR'S MEMORANDUM OF LAW IN
<u>SUPPORT OF HIS MOTION TO DISMISS</u>**

McCormick & O'Brien, LLP

Liam O'Brien
Scott D. Smith
9 East 40th Street, Fourth Floor
New York, New York 10016
Tel: (212) 286-4471
Fax: (212) 504-9574

*Attorneys for Edward O'Connor*

# TABLE OF CONTENTS

I.      INTRODUCTION ………………………………………………………… 1

II.     RELEVANT FACTUAL ALLEGATIONS ………………………………..... 2

III.    ARGUMENT ……………………………………………………………… 3

    A.  PLAINTIFF'S CLAIM AGAINST O'CONNOR PURSUANT TO SECTION
        20 (A) SHOULD BE DISMISSED …………….………………………... 3

        1.  Plaintiff Has Failed To Plead O'Connor's "Control" Of Optionable ….….... 5

        2.  There Is No "Culpable Participation" On The Part Of O'Connor ……….. 10

            a.  The Legal Standard ……………………………………………… 10

            b.  Pleading With Particularity ……………………………………… 13

            c.  The "Group Pleading Doctrine" …………………………………. 17

            d.  Conclusion …………………………………………………….. 20

    B.  ASSUMING ARGUENDO THAT THIS COURT DENIES O'CONNOR'S
        MOTION TO DISMISS PLAINTIFF'S SECTION 20 (A) CLAIM,
        PLAINTIFF'S SECTION 10 (B) AND RULE 10B-5 CLAIMS AGAINST
        O'CONNOR SHOULD BE DISMISSED AS A MATTER OF LAW ……….. 21

IV.     CONCLUSION ……………………………………………………………. 24

## TABLE OF AUTHORITIES

**Cases**

*American High-Income Trust v Alliedsignal*, 329 FSupp2d 534, 549
(SD NY 2004) ……………………………………………………………..…… 14

*Amusement Indus., Inc. v Stern*, 2010 WL 445906, at \*15 (SD NY 2010) ………..….. 18

*Boguslavsky v Kaplan*, 159 F3d 715, 720 (2d Cir 1998) ………………..…... 4, 10, 11, 13

*Bond Opportunity Fund v Unilab Corp.*, 2003 WL 21058251, at \*4
 (SD NY 2003) …………………………………………………..……..……….. 19

*Brickman v Tyco Toys*, 731 FSupp 101, 106 (SD NY 1990) ……………………………… 13

*Burstyn v Worldwide Xceed Group, Inc.*, 2002 WL 31191741, at \*7
(SD NY 2002) …………………………………………………..…... 10, 14, 15, 18

*Chill v General Elec. Co.*, 101 F3d 263, 270-71 (2d Cir 1996) …………………..……… 12

*City of Pontiac Gen. Employees' Ret. Sys. v Lockheed Martin Corp.*,
2012 WL 2866425 (SD NY 2012) …………………………………….............. 21, 22, 23

*Cohen v Citibank, N.A.*, 954 FSupp 621, 629 (SD NY 1996) …………….…….…... 5, 7

*Copland v Grumet*, 1998 WL 256654 \*15 (D NJ 1998) …………………….…………... 9

*Cromer Fin. Ltd. v Berger*, 137 FSupp2d 452, 483 (SD NY 2001) ………….…… 4, 7, 14

*Dresner v Utility.com, Inc.*, 371 FSupp2d 476, 494 (SD NY 2005) …………….…….... 18

*Edison Fund v Cogent Inv. Strategies Fund, Ltd.*, 551 FSupp2d 210, 232
(SD NY 2008) …………………………………………………………………….. 16

*Ellison v Am. Image Motor Co., Inc.*, 36 FSupp2d 628, 642 (SD NY 1999) ………... 6, 13

*Food & Allied Serv. Trades Dept., AFL-CIO v Millfeld Trading Co., Inc.*,
841 FSupp 1386, 1391 (SD NY 1994) ………………………………….……..…… 7, 8

*Ganino v Citizens Utilities Co.*, 228 F3d 154, 170 (2d Cir 2000) ………….………... 11

*Geiger v Solomon-Page Group, Ltd.*, 933 FSupp 1180, 1189-90
(SD NY 1996) ……………………………………………………………….……... 18

*Glickman v Alexander & Alexander Serv., Inc.*, 1996 WL 88570, at \*14

(SD NY 1996) ……………………………………………………….………... 17

*Gordon v Burr*, 506 F2d 1080, 1086 (2d Cir 1974) …………………………….……… 23

*Gurfein v Ameritrade, Inc.*, 411 FSupp2d 416, 426-27 (SD NY 2006) ………….……19

*Hemming v Alfin Fragrances, Inc.*, 690 FSupp 239, 245 (SD NY 1988) ……….…….. 8

*In re Adelphia Communications Corp. Sec. & Derivative Litig.*,
398 FSupp2d 244, 262 (SD NY 2005) ……………………………………………….. 8

*In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *17 (SD NY 2004) ……….……. 19

*In re Alstom SA Sec. Litig.*, 406 FSupp2d 433, 487-88, 489, 499-504
(SD NY 2005) ……………………………………………………………….……… 7

*In re Am. Express*, 2004 WL 632750, at *13 n.11 (SD NY 2006) …………………... 17

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
2000 WL 365314, at *21 (SD NY 2000) …………………………………………….…. 13

*In re Asia Pulp & Paper Sec. Litig.*, 293 FSupp2d 391, 395 (SD NY 2003) ………….... 8

*In re Baesa Sec. Litig.*, 969 FSupp 238, 242 (SD NY 1997) …………..…………….……. 12

*In re Blech Sec. Litig.*, 961 FSupp569, 586 (SD NY 1997) …………...………………... 5

*In re Citigroup, Inc. Sec. Litig.*, 330 FSupp2d 367, 381 (SD NY 2004) ………….……. 20

*In re Cross Media Mktg. Corp. Sec. Litig.*, 314 FSupp2d 256, 265 (SD NY 2004) …….. 19

*In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *6-7 (SD NY 2002) …........ 9

*In re Digital Island Sec. Litig.*, 223 FSupp2d 546, 561 n.9 (D Del 2002) ……………..... 7

*In re Emex Corp. Sec. Litig.*, 2002 WL 31093612, at *9 (SD NY 2002) …………………14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 FSupp2d 429, 457 (SD NY 2005) ….. 16

*In re Global Crossing, Ltd. Sec. Litig.*, 322 FSupp2d 319 (SD NY 2004) ……………. 16

*In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *12
(SD NY 2005)……………………………………………………………6, 10, 15, 18

*In re Global Crossing, Ltd. Sec. Litig.*, 2006 WL 1628469, at *11 (SD NY 2006)………. 15

*In re Health Mgmt. Sys., Inc. Sec. Litig.* 1998 WL 283286, at *6 (SD NY 1998) ………... 17

*In re Livent Inc. Sec. Litig.*, 78 FSupp2d 194, 221 (SD NY 1999) ……………... 5, 6, 11, 14

*In re Loral Space & Communications Ltd. Sec. Litig.*, 2004 WL 376442, at *19
(SD NY 2004) ………………………………………………………………………….. 14

*In re Mobilemedia Sec. Litig.*, 28 FSupp2d 901, 940 (D NJ 1998) ………………………. 11

*In re Pfizer Inc. Sec. Litig.*, 584 FSupp2d 621, 638 (SD NY 2008) ………………………. 20

*In re Scholastic Corp. Sec. Litig.*, 252 F3d 63, 77-78 (2d Cir 2001) ……………………..4, 11

*In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 WL 1234601, at *7 (SD NY 2000) ..... 17, 19

*In re Take-Two Interactive Sec. Litig.*, 551 FSupp2d 247, 307-08 (SD NY 2008) ……..… 16

*In re Twinlab Corp. Sec. Litig.*, 103 FSupp2d 193, 208 (ED NY 2000) …………………... 14

*In re WorldCom Sec. Litig.*, 294 FSupp2d 392, 415 (SD NY 2003) ………………………. 12

*Ingenito v Bermec Corp.*, 441 FSupp 525, 533 (SD NY 1977) ……………………………... 12

*Internet Law Library, Inc. v Southridge Capital Mgmt., LLC,*
223 FSupp2d 474, 487-88 (SD NY 2002) ……………………………………………... 4, 13, 14

*Jacobs v Coopers & Lybrand, L.L.P.*, 1999 WL 101772, at *17 (SD NY 1999) ………….. 5

*Kalin v Xanboo, Inc.*, 526 FSupp2d 392, 404 (SD NY 2007) ……………………………… 4

*Kalnit v Eichler*, 264 F3d 131, 140 (2d Cir 2001) …………………………………… 18, 22, 23

*Kersh v Gen. Counsel of the Assemblies of God*, 804 F2d 546, 549 (9th Cir 1986) ………... 6

*Lanza v Drexel & Co.*, 479 F2d 1277, 1299 (2d Cir 1973) …………………………… 20, 23

*Lemmer v Nu-Kote Holding, Inc.*, 2001 WL 1112577, at *12 (ND Tex 2001) ……………. 23

*Makor Issues & Rights, Ltd. v Tellabs, Inc.*, 437 F3d 588, 602-03 (7th Cir 2006),
*revd on other grounds*, 551 US 308 (2007) ………………………………………………..… 19

*Marbury Management, Inc. v Kohn*, 629 F2d 705, 716 (2d Cir 1980) …………………….. 12

*Mishkin v Ageloff*, 1998 WL 651065, at *25-26 (SD NY 1998) ………………..…… 5, 9, 11, 13

*Novak v Kasaks*, 26 FSupp2d 658, 663 (SD NY 1998) …………………………………… 6

*Novak v Kasaks*, 216 F3d 300, 309 (2d Cir 2000) ……………………………………….. 17

*PR Diamonds, Inc. v Chandler,* 91 Fed Appx 418, 442 & n.4 (6th Cir 2004) ………..… 22, 23

*Rich v Maidstone Fin. Inc.*, 2002 WL 31867724, at *11 (SD NY 2002) ………………… 5, 14

*Rochez Bros. v Rhoades*, 527 F2d 880, 890 (3d Cir 1975) ………………………………… 11

*Rubinstein v Skyteller, Inc.*, 48 FSupp2d 315, 323 (SD NY 1999) ………………………. 6, 7

*SEC v Chester Holdings, Ltd.*, 41 FSupp2d 505, 527 (D NJ 1999) …………………………. 4

*SEC v Enterprise Solutions, Inc.*, 142 FSupp2d 561, 575 (SD NY 2001) ……………………. 4

*SEC v First Jersey Sec., Inc.*, 101 F3d 1450, 1472 (2d Cir 1996) ……………..... 1, 4, 7, 11, 21

*SEC v Pasternack*, 561 FSupp2d 459, 503-04 (D NJ 2008) …………………………………. 4

*SEC v  Todd*, 642 F3d 1207, 1223 (9th 2011) …………………………………………….. 4

*Sloane Overseas Fund. Ltd. v Sapiens Intl. Corp.*, 941 FSupp 1369, 1378
(SD NY 1996) ……………………………………………………………………….. 7, 9

*Sofi Classic S.A. de C.V. v Hurowitz*, 444 FSupp2d 231, 248-49 (SD NY 2006) ………….. 18

*Southland Sec. Corp. v INSpire Ins. Solutions, Inc.*, 365 F3d 353, 363-64
(5th Cir 2004) …………………………………………………………………………… 19

*Steed Fin. LDC v Laser Advisers, Inc.*, 258 FSupp2d 272, 280 (SD NY 2003) …………. 4, 14

*Suez Equity Investors, L.P. v Toronto-Dominion Bank*, 250 F3d 87, 101
 (2d Cir 2001) ………………………………………………………………………..… 11

*Twombly v Bell Atlantic Corp.*, 425 F3d 99 (2d Cir 2005*)* ………………………………. 6

*Wallace v Buttar*, 239 FSupp2d 388, 396 (SD NY 2003) …………………………….....… 5

*Winer Family Trust v Queen*, 503 F3d 319, 334-37 (3d Cir 2007) ………………………… 19

**Statutes**

15 U.SC. § 77t(a) ……………………………………………………….…… 4

17 C.F.R. § 240.12b-2 ……………………………………………….…… 7

Fed.R.Civ.P. 9(b) …………………………………………………………… 23

Fed.R.Civ.P 12(b)(6) …………………………………………………….... 23, 24

## I.   <u>INTRODUCTION</u>

Defendant Edward O'Connor ("O'Connor") respectfully submits this Memorandum of Law in support of his motion to dismiss with prejudice the Eighth Cause of Action alleged in the First Amended Complaint ("Amended Complaint") against him filed by Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") on or about September 10, 2012, pursuant to rules 9 (b) and 12 (b) (6) of the Federal Rules of Civil Procedure, and, in the alternative, to dismiss with prejudice the First and Second Causes of Action alleged in the Amended Complaint, pursuant to rules 9 (b) and 12 (b) (6) of the Federal Rules of Civil Procedure, and granting such other and further relief as this Court deems just, equitable and proper.

Plaintiff apparently added Optionable, Inc. ("Optionable" or "Company") as a defendant to this action in order to satisfy the first element of its Section 20 (a) claim against O'Connor. O'Connor can only be liable as a control person if the purported "controllee," *i.e.*, Optionable, is properly alleged to have committed a violation of the 1934 Act.  In other words, the control-person claim against O'Connor is completely derivative of the Section 10 (b) and Rule 10b-5 claims against Optionable.  (*see SEC v First Jersey Sec., Inc.*, 101 F3d 1450, 1472 [2d Cir 1996] [stating that primary violation by controlled person is element of control-person liability].)  Thus, Plaintiff's eleventh-hour Section 10 (b) and Rule 10b-5 claims alleged against Optionable are a transparent attempt to supplement its existent primary liability claims against O'Connor with a control-person liability claim against him as well.

Notwithstanding the fact that Plaintiff has failed to make a *prima facie* showing of O'Connor's purported "control" of Optionable or his "culpable participation" with the required specificity, as will be discussed *infra*, Plaintiff cannot simultaneously assert both Section 10 (b) and Rule 10b-5 claims as well as a Section 20 (a) claim against O'Connor.  Where, as here, O'Connor is already alleged to be primarily liable for violations of the securities laws, it defies

logic to assert a secondary liability claim under Section 20 (a) against him – a person cannot be both the "controller" and the "controllee".  Accordingly, O'Connor respectfully requests that the Court issue an order dismissing the Section 20 (a) claim against him pursuant to rules 9 (b) and 12 (b) (6) of the Federal Rules of Civil Procedure, and, in the alternative, dismissing the Section 10 (b) and Rule 10b-5 claims against him pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure.

## II.   RELEVANT FACTUAL ALLEGATIONS

The allegations referenced herein pertain only to Plaintiff's new Section 20 (a) claim asserted against O'Connor as follows:

i.   After four years since the filing of its original Complaint, Plaintiff added Optionable as a defendant to this action asserting primary violations of Section 10 (b) of the Exchange Act and Rule 10b-5 thereunder.  (*see* Am. Compl. ¶¶ 20, 58-63, 65-71.)[1]

ii.   Plaintiff generally alleges that as Optionable's President, Treasurer, and director, and one of its founders and largest shareholders, [O'Connor] had the power to direct, influence, or control, or to cause the direction of, the management, policies, and decision-making of Optionable.  (*see id.* at ¶¶ 18, 48[b] & [c], 95.)

iii.   Plaintiff further alleges that O'Connor was a direct and culpable participant in the aforementioned primary violations committed by Optionable.  (*see id.* at ¶¶ 2-5, 11, 28,-31, 44, 97.)

iv.   The gravamen of Plaintiff's Section 20 (a) claim against O'Connor with respect to his "culpable participation" hinges on the "group pleading doctrine" and/or the alleged "scheme"

---

[1] Although Plaintiff has asserted other primary violations of the Exchange Act against Optionable in its Amended Complaint, for purposes of Plaintiff's newly added control-person liability claim against O'Connor, this Memorandum will focus on the relevant facts as they relate to Plaintiff's Section 10 (b) and Rule 10b-5 claims against Optionable (and O'Connor), as well as its Section 20 (a) claim against O'Connor, in the Amended Complaint.

or "collusion" amongst *all* of the defendants to defraud Optionable's shareholders, which does not survive the requirement under Section 20 (a) that misstatements or omissions be pled with particularity against *each* individual defendant, rather than against a group of defendants.  (*see id.* at ¶¶ 2-5, 11, 28-31, 44.)   Further, Plaintiff impliedly tries to impute Lee and Cassidy's criminality to O'Connor as a means of bolstering its Section 20 (a) claim against O'Connor under the "group pleading doctrine." (*see id*. at ¶¶ 7-8.)[2]

   v.  Based on the foregoing, Plaintiff alleges that O'Connor, pursuant to Section 20 (a) of the Exchange Act, is liable as a control person jointly and severally with, and to the same extent as, Optionable for Optionable's violations of the Exchange Act.  (*see id*. at ¶¶ 11[c], 98.)

   As set forth in further detail below, because Plaintiff fails to make a *prima facie* case of O'Connor's purported "control" of Optionable and/or his "culpable participation" in Optionable's alleged fraud with the requisite particularity as required under Section 20 (a), Plaintiff's control-person liability claim against O'Connor fails as a matter of law.  Alternatively, as Plaintiff's Section 20 (a) claim is predicated upon Optionable's purported violations of the securities laws, the section 10 (b) and 10b-5 claims against O'Connor should be dismissed.

## III. ARGUMENT

## A. PLAINTIFF'S CLAIM AGAINST O'CONNOR PURSUANT TO SECTION 20 (a) SHOULD BE DISMISSED

   Section 20 (a) of the Exchange Act provides as follows:

   Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

---

[2] Notwithstanding Plaintiff's frequent reference throughout the Amended Complaint to the alleged "scheme" or "collusion" amongst *all* of the defendants to defraud Optionable's shareholders, as it stands, O'Connor has never been indicted, convicted, or had criminal charges filed against him.

(15 USC § 78t [a].)

It is well-settled that the Second Circuit has adopted a strict test for pleading and proving control-person liability.  To state a *prima facie* claim for liability under Section 20 (a), a plaintiff must adequately plead facts sufficient to show: (1) a primary violation of the Exchange Act by the controlled person; (2) control of the primary violator by the controlling person; and (3) that the controlling person was, in some meaningful sense, a culpable participant in the primary violation.  (*see First Jersey Sec., Inc.*, 101 F3d at 1473-74; *Boguslavsky v Kaplan*, 159 F3d 715, 720 [2d Cir 1998]; *Kalin v Xanboo, Inc.*, 526 FSupp2d 392, 404 [SD NY 2007]).  Notably, an examination of case precedent reveals that the SEC must meet the same high threshold as a private plaintiff to establish a Section 20 (a) *prima facie* case.  (*see e.g. First Jersey Sec., Inc.*, 101 F3d at 1473-74; *SEC v Enterprise Solutions, Inc.*, 142 FSupp2d 561, 575 [SD NY 2001]; *SEC v  Todd*, 642 F3d 1207, 1223 [9th 2011]; *SEC v Pasternack*, 561 FSupp2d 459, 503-04 [D NJ 2008]; *SEC v Chester Holdings, Ltd.*, 41 FSupp2d 505, 527 [D NJ 1999].)

Each and every element must be satisfied by the pleading of sufficiently particularized allegations (*Boguslavsky v Kaplan*, 159 F3d 715, 720 [2d Cir 1998], citing *First Jersey Sec., Inc.*, 101 F3d at 1472; *see also In re Scholastic Corp. Sec. Litig.*, 252 F3d 63, 77-78 [2d Cir 2001]; *Steed Fin. LDC v Laser Advisers, Inc.*, 258 FSupp2d 272, 280 [SD NY 2003] [dismissing Section 20 (a) claim where plaintiff failed to satisfy pleading requirements by improperly alleging primary violation); *Internet Law Library, Inc. v Southridge Capital Mgmt., LLC,* 223 FSupp2d 474, 487-88 [SD NY 2002] [dismissing Section 20 (a) claim for failure by plaintiff to properly allege culpable participation]; *Cromer Fin. Ltd. v Berger*, 137 FSupp2d 452, 483 [SD NY 2001] [dismissing control person claim against alleged parent of administrator of offshore investment fund].)

Here, Plaintiff fails to allege facts sufficient to satisfy the final two elements, each of which, standing alone, would mandate dismissal.  For this reason, the control person claim against O'Connor must be dismissed.

### 1.   Plaintiff Has Failed To Plead O'Connor's "Control" Of Optionable

Courts in this Circuit have routinely dismissed Section 20 (a) claims because of insufficient allegations of control.  (*see e.g. In re Blech Sec. Litig.*, 961 FSupp569, 586 [SD NY 1997]; *Cohen v Citibank, N.A.*, 954 FSupp 621, 629 [SD NY 1996]; *Mishkin v Ageloff*, 1998 WL 651065, at *25-26 [SD NY 1998].)  Under Second Circuit law, pleading facts that demonstrate actual control is required.  (*see Jacobs v Coopers & Lybrand, L.L.P.*, 1999 WL 101772, at *17 [SD NY 1999] ["To withstand a motion to dismiss, a plaintiff must plead facts from which it can be inferred that the alleged controlling person had the power to control or influence, directly or indirectly, the corporation or its management"]; *In re Blech Sec. Litig.*, 961 FSupp 569, 586 [SD NY 1997] ["Actual control is essential to control person liability"]; *Wallace v Buttar*, 239 FSupp2d 388, 396 [SD NY 2003] ["power to direct the management and policies of a person must be a real, de facto power and not just de jure"], *revd on other grounds* 378 F3d 182 [2d Cir 2004]; *Rich v Maidstone Fin. Inc.*, 2002 WL 31867724, at *11 [SD NY 2002] ["A complaint must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person"]; *In re Livent Inc. Sec. Litig.*, 78 FSupp2d 194, 221 [SD NY 1999] ["Actual control is essential to control person liability"].)

Plaintiff asserts that O'Connor is liable as a control person because of his direct or indirect control over Optionable by virtue of his various high-level positions within the Company, specifically pointing to his prior status as Optionable's President, Treasurer, and director.  (*see* Am. Compl. ¶ 18, 95.)  Plaintiff also asserts that O'Connor, as "one of its founders

and largest shareholders, … had the power to direct, influence, or control, or to cause the direction of, the management, policies, and decision-making of Optionable" (*id*.).

Allegations of control by status, however, are insufficient.  "Because 'the power to direct the management and policies of a person must be a real, *de facto* power and not just *de jure*[,] … officer or director status alone does not constitute control'" (*In re Global Crossing Ltd. Sec. Litig.*, 2005 WL 1907005, at *12 [SD NY 2005]; *see also In re Livent, Inc. Sec. Litig.*, 78 FSupp2d 194, 221 [SD NY 1999] [same]).  Courts repeatedly have held that control cannot be inferred − even from status as an owner, director, or high-ranking officer − for purposes of the securities laws.  (*see e.g. Kersh v Gen. Counsel of the Assemblies of God*, 804 F2d 546, 549 [9th Cir 1986] [holding that church umbrella organization did not "control" member churches despite power to appoint local churches' ministers); *In re Livent*, 78 FSupp2d at 221 ["Officer or director status alone does not constitute control.... Nor does membership on an audit committee."]; *Rubinstein v Skyteller, Inc.*, 48 FSupp2d 315, 323 [SD NY 1999] [holding that defendant's status as chief financial officer was insufficient by itself to establish control]; *Ellison v Am. Image Motor Co., Inc.*, 36 FSupp2d 628, 642 [SD NY 1999] [rejecting conclusory assertion of officers' "control" of corporation and stating: "[T]here is no allegation in the complaint that the [defendants] had the power to direct the [corporation].  Aside from the naked assertion that the [defendants] were 'officers' of the [corporation], the complaint is devoid of any allegations as to how these [defendants] 'controlled' these companies."]; *Novak v Kasaks*, 26 FSupp2d 658, 663 [SD NY 1998] [dismissing control-person claim with prejudice and stating: "Even had we found a properly pled violation of the 1934 Act, we would not automatically impute this violation to 'Merrill Lynch' as a controlling entity [of its employees]."].)

The Second Circuit's decision in *Twombly v Bell Atlantic Corp.*, 425 F3d 99 (2d Cir 2005*), revd on other grounds* 550 US 544 (2007), does not purport to disturb the settled principle

6

that "director status alone does not constitute control," and this principle has continued to be applied to dismiss such claims under analogous circumstances.  (*see e.g. In re Alstom SA Sec. Litig.*, 406 FSupp2d 433, 487-88, 489, 499-504 [SD NY 2005]; *Sloane Overseas Fund. Ltd. v Sapiens Intl. Corp.*, 941 FSupp 1369, 1378 [SD NY 1996] [When a defendant does not clearly occupy control status, the plaintiff must plead facts from which control status can be inferred, *e.g.*, that defendant had power, pursuant to an agreement to control the primary violator or aided the primary violator in performing some culpable conduct linking the defendant to the primary violation for which relief is sought]; *Cohen v Citibank*, 954 FSupp 621, 629 [SD NY 1996]; *Food & Allied Serv. Trades Dept., AFL-CIO v Millfeld Trading Co., Inc.*, 841 FSupp 1386, 1391 [SD NY 1994] [holding that a company's Treasurer, Chief Financial Officer, or Secretary, each of whom "was involved as well in preparation or review of [the Company's] public statements," were not thereby control persons]; *In re Digital Island Sec. Litig.*, 223 FSupp2d 546, 561 n.9 [D Del 2002] ["[E]ven a CEO is not automatically a 'controlling person' under Section 20 (a)," *affd* 357 F3d 322 [3d Cir 2004].)

In order to adequately plead control, a plaintiff must allege facts establishing "the power to direct or cause the direction of the management and policies" the company.  (*see* 17 CFR 240.12b-2.)  For purposes of pleading a violation of Section 20 (a), "control over a primary violator may be established by showing that [the controller] possessed the power to direct or cause the direction of the management and policies of a person whether through ownership of voting securities, by contract, or otherwise" (*First Jersey Sec., Inc.*, 101 F3d at 1472).  "Actual control over the wrongdoer and the transactions in question is necessary for control person liability" (*Cromer Fin. Ltd.*, 137 FSupp2d at 484).  Simply alleging that the defendant was in an executive position is insufficient to allege control person liability.  (*see Rubinstein v Skyteller, Inc.*, 48 FSupp2d 315, 323 [SD NY 1999] [where complaint alleged fraudulent stock

transactions, bare allegation that defendant was Treasurer and/or Chief Financial Officer "is not sufficient to establish control person liability"]; *Hemming v Alfin Fragrances, Inc.*, 690 FSupp 239, 245 [SD NY 1988] ["[a] person's status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20"); *see also In re Adelphia Communications Corp. Sec. & Derivative Litig.*, 398 FSupp2d 244, 262 [SD NY 2005] ["[a] court must consider the total effect of the various indicia of control in combination, rather than examining any one indicia in isolation"]; *Food & Allied Serv. Trades Dept., AFL-CIO*, 841 FSupp at 1391 ["[a]t a minimum, the corporate positions held by defendants, along with any other allegations of a special relationship to the primary violator, must support a reasonable inference that they had the potential power to influence and direct the activities of the primary violator"].)

Here, Plaintiff has not met this standard with respect to O'Connor.  Plaintiff does not describe with particularity how O'Connor was able to direct or influence Optionable, nor does it allege that O'Connor was individually involved in, or even knew about, Optionable's alleged misconduct. Instead, Plaintiff's allegations about O'Connor amount to no more than a claim that O'Connor is responsible for Optionable's alleged misconduct simply by virtue of his various high-level positions within Optionable.  Plaintiff's failure to provide even a modicum of detail about how O'Connor allegedly "controlled" Optionable – let alone the particularized detail required by rule 9 (b) – is fatal to its claim for violation of Section 20 (a).

Courts in the Southern District routinely dismiss Section 20 (a) claims in similar circumstances.  For example, in *In re Asia Pulp & Paper Sec. Litig.*, 293 FSupp2d 391, 395 [SD NY 2003], the court dismissed a Section 20 (a) claim where, as here, there was nothing more than conclusory allegations of control and there were no facts pled that would establish that the alleged control person had the ability to control and direct the activities of the primary violator. In that case, like the case at bar, plaintiff had alleged in conclusory terms that the alleged control

person "directed the management and policies" of the primary violator.  The court rejected this

effort, holding that there had to be an affirmative pleading of specific facts that would support

such a statement.  (*see also In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *6-7

[SD NY 2002] [dismissing Section 20 (a) claim where complaint contained nothing but

conclusory allegations of control].)

    As stated above, Plaintiff also alleges that as "one of its founders and largest

shareholders, O'Connor had the power to direct, influence, or control, or to cause the direction

of, the management, policies, and decision-making of Optionable."  (*see* Am. Compl. ¶ 18, 95.)

Strikingly, there are no specific allegations that O'Connor owns a majority of Optionable's

voting securities, can control Optionable's acts, or hire or fire its employees.  (*compare Mishkin*,

1998 WL 651065, at* 26.)   In rejecting an allegation of control based on "substantial" stock

ownership, the court in *Copland v Grumet*, CIV.A. 96-3351 MLP, 1998 WL 256654 *15 (D NJ

1998) stated:

> At a minimum, the allegations concerning the controlling person's relationship
> with the primary violator must support a reasonable inference that the control
> person had the power to influence and [to] direct the activities of the primary
> violator (*Sloane Overseas Fund, Ltd.*, 941 FSupp at 1370).  The conclusory
> allegations in the [complaint] do not satisfy this standard.  For example, paragraph
> 16 states that 'by virtue of their positions of power and influence, the individual
> defendants controlled all aspects of Manhattan Bagel's operations, including the
> dissemination of information.' … This statement, however, does nothing more
> than restate the legal standard for control person liability; it does not provide
> adequate facts to support these allegations.  (*see In re Gupta Corp. Sec. Litig.*, 900
> FSupp 1217, 1243 [ND Ca 1994] [motion to dismiss plaintiffs' claims of control
> person liability against defendant granted; plaintiffs' claims that defendant
> 'controlled the contents' of financial reports and press releases were conclusory
> and plaintiff failed to provide any factual support for allegations of control].

(*Id.*)

    Nor is Plaintiff able to salvage its control person claims against O'Connor with the

conclusory and nebulous assertion that O'Connor approved or signed certain periodic reports

filed with the SEC as well as Optionable's Form 10-KSB.  (*see* Am. Compl. ¶¶ 4, 45, 46.) Plaintiff fails to allege any facts that would allow the Court to conclude that O'Connor "possessed in fact" the ability to direct the contents of the any of the aforementioned filings – a missing allegation of particular significance.  Tellingly, the Complaint does not specifically allege that, although O'Connor sometimes signed certain SEC filings, he had the actual power to direct or control the content and dissemination of the statements made therein, or had the actual power to prevent the issuance of, or correct, any of its allegedly false and misleading statements. Without these allegations, Plaintiff's control-person claim falls far short.

Based on this failure to allege specific facts that would demonstrate the existence of actual "control," plaintiff has failed to satisfy the second element of control-person liability under Section 20 (a).

### 2.   There Is No "Culpable Participation" On The Part Of O'Connor

#### a.   The Legal Standard

Assuming *arguendo* that Plaintiff's control allegations against O'Connor pass muster, its Section 20 (a) claims nevertheless should be dismissed against O'Connor because Plaintiff has not (and cannot) plead O'Connor's culpable participation in the fraud with the required particularity.  As this Court has repeatedly held, "[i]n order to establish a *prima facie* case of liability under § 20 (a), a plaintiff must show ... 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation" (*Boguslavsky*, 159 F3d at 720; *Burstyn v Worldwide Xceed Group, Inc.*, 2002 WL 31191741, at *7 [SD NY 2002] ["several recent Second Circuit opinions appear to treat culpable participation as an element of the *prima facie* case," and thus, "[the defendant's] culpable participation must be alleged in addition to control"]; *In re Global Crossing*, 2005 WL 2990646, at *8 ["culpable participation must be alleged in addition to control" for a § 20 (a) claim]).

10

The Second Circuit has recently clarified that pleading the element of culpable participation is an essential prerequisite to stating a claim under Section 20 (a). "In order to establish a *prima facie* case of liability under § 20 (a), a plaintiff must show ... 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation" (*Boguslavsky*, 159 F3d at 720; *First Jersey Sec., Inc.*, 101 F3d at 1472; *see also In re Scholastic Corp. Sec. Litig.*, 252 F3d at 77; *Suez Equity Investors, L.P. v Toronto-Dominion Bank*, 250 F3d 87, 101 [2d Cir 2001]; *Ganino v Citizens Utilities Co.*, 228 F3d 154, 170 [2d Cir 2000]).

Culpable participation is an essential element of control-person liability and an important limitation on what otherwise could be enormous liability – almost strict liability – far out of proportion to fault. As the Third Circuit has stated in adopting the Second Circuit standard:

> [W]e doubt that Congress would have imposed a provision like Section 20 (a) and permitted liability to be found on something other than culpable participation. As we stated earlier, Congress, by enacting Section 20 (a), did not intend anyone to be an insurer against the fraudulent activities of another.... Liability may be established whether the secondary defendant was directly or indirectly involved in the fraud ... and may be premised on inaction, but only if it is apparent that the inaction intentionally furthered the fraud or prevented its discovery.

(*Rochez Bros. v Rhoades*, 527 F2d 880, 890 [3d Cir 1975]).

(*See also In re Mobilemedia Sec. Litig.*, 28 FSupp2d 901, 940 [D NJ 1998] ["In addition to control, culpable participation must be proved before control person liability for misrepresentations attaches.... The control person liability provision of the Securities Act and the Exchange Act were not intended to make control persons insurers against the fraudulent activities of others."]; *In re Livent*, 78 FSupp2d at 222 [dismissing control-person claim for failure to allege culpable participation with particularity].)

As the *Mishkin* court reasoned in dismissing a similarly empty control-person claim:

> The problem with these allegations is that while they adequately plead control, they do not adequately allege what Ageloff did in the course of exercising that control.... [T]he Complaint must provide some detail about what Ageloff is alleged to have done, and when he did it, in order for me to hold that the Complaint provides 'particularized facts' of Ageloff's culpable participation. Because of the absence of these details, Ageloff's motion must be granted.

(1998 WL 651065, at *26).

The culpable-participation element distinguishes liability under Section 20 (a) from respondeat superior or other forms of vicarious liability in that the control person (even assuming control) is not liable for the wrongdoing of the controlled person unless the control person actually did something to further the controllee's wrongdoing:

> Under [section] 20 (a) a control person may be liable for the misdeeds of those who act under his direction. However, [section] 20 (a) does not impose liability automatically; it is not a statutory incarnation of the common law theory of respondeat superior. Only those who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons ... are meant to come within the ambit of the provision for vicarious liability.

(*Ingenito v Bermec Corp.*, 441 FSupp 525, 533 [SD NY 1977]).

(*See also Marbury Management, Inc. v Kohn*, 629 F2d 705, 716 [2d Cir 1980] [noting that Section 20 (a) liability was narrower than traditional respondeat superior liability]). The requirement that the control person culpably participate in the controlled person's alleged wrongdoing is consistent with the rule in this Circuit that a subsidiary corporation's fraudulent conduct is not imputed to the parent corporation. (*see Chill v General Elec. Co.*, 101 F3d 263, 270-71 (2d Cir 1996); *In re Baesa Sec. Litig.*, 969 FSupp 238, 242 [SD NY 1997] ["[T]he law in this Circuit is clear that a subsidiary's fraud cannot be automatically imputed to its corporate parent ...."].) Instead, the owner's conduct must be separately and specifically alleged, something that Plaintiff here has failed to do.

The concept of culpable participation describes that degree of control which is sufficient to render a person liable under Section 20 (a)" (*In re WorldCom Sec. Litig.*, 294 FSupp2d 392,

12

415 [SD NY 2003]).  A plaintiff must "adduce facts showing culpable participation in order to establish a *prima facie* case of control person liability" (*Internet Law Library, Inc.*, 223 FSupp2d at 488; *see also Boguslavsky*, 159 F3d at 720 ["In order to establish a *prima facie* case of liability under Section 20 (a), a plaintiff must show … 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation").

      b.   <u>Pleading With Particularity</u>

Plaintiff has missed the mark on what is required to establish "culpable participation" under Section 20 (a).  Where, as here, the allegations in the complaint sound in fraud, the elements of control-person liability must be pleaded with particularity under rule 9 (b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("Reform Act").[3]  Indeed, according to the *Mishkin* court, a plaintiff must allege "particularized facts of the controlling person's conscious misbehavior" (*Mishkin*, 1998 WL 651065, at *23 [applying rule 9 (b) and Reform Act in dismissing control-person claim for failure to plead with particularity]; *see also In re American Bank Note Holographics, Inc. Sec. Litig.*, 2000 WL 365314, at *21 [SD NY 2000] [stating that plaintiff alleging control-person liability must allege "particularized facts as to the controlling person's culpable participation in the fraud"]; *Ellison*, 36 FSupp2d at 641; *Brickman v Tyco Toys*, 731 FSupp 101, 106 [SD NY 1990] [dismissing control-person claim under rule 9 (b) because the plaintiff did "not plead with any degree of specificity that this defendant was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person"].)

---

[3] As stated above, while, in general, the Reform Act does not apply to the SEC, an examination of case precedent reveals that the SEC must meet the same high threshold as a private plaintiff to establish a Section 20 (a) *prima facie* case.  (*see e.g. First Jersey Sec., Inc.*, 101 F3d at 1473-74; *Enterprise Solutions, Inc.*, 142 FSupp2d at 575; *Todd*, 642 F3d at 1223; *Pasternack*, 561 FSupp2d at 503-04; *Chester Holdings, Ltd.*, 41 FSupp2d at 527.)

The most recent district court cases confirm that plaintiffs are subject to heightened pleading requirements with respect to culpable participation, requiring a plaintiff to allege particularized facts sufficient to raise an inference that the alleged control person acted, or failed to act, with knowledge or recklessness.  (*see e.g. American High-Income Trust v Alliedsignal*, 329 FSupp2d 534, 549 [SD NY 2004] [plaintiff must plead that "defendant was [a] culpable participant in the fraud"]; *In re Loral Space & Communications Ltd. Sec. Litig.*, 2004 WL 376442, at *19 [SD NY 2004]; *Steed Fin. LDC*, 258 FSupp2d at 278-80 [holding that the heightened pleading requirements established by the Reform Act apply to the culpable participation element of Section 20 (a) and that those requirements are not satisfied unless the complaint "state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.*, conscious misbehavior or recklessness]; *Burstyn*, 2002 WL 31191741, at *7-8 [dismissing complaint where plaintiff had alleged primary violation but had failed to allege culpable participation with particularity required by PSLRA]; *In re Emex Corp. Sec. Litig.*, 2002 WL 31093612, at *9 [SD NY 2002] [dismissing Section 20 (a) claim where plaintiff failed to plead culpable participation with adequate particularity]; *Internet Law Library, Inc.*, 223 FSupp2d at 488 ["[P]laintiff must adduce facts showing culpable participation in order to establish a *prima facie* case of control person liability"]; *see also Rich v Maidstone Fin.*, 2002 WL 31867724 at *12 [SD NY 2002] [holding that where "a complaint contains no detailed allegations regarding the state of mind of the 'control person,' a Section 20 (a) claim must be dismissed for failure to allege culpable participation"]; *Cromer Fin. Ltd.*, 137 FSupp2d at 484 [holding that culpable participation element "is subject to the PSLRA's heightened pleading standard"]; *In re Twinlab Corp. Sec. Litig.*, 103 FSupp2d 193, 208 [ED NY 2000] ["the complaint must allege facts demonstrating culpable conduct"]; *In re Livent, Inc. Sec. Litig.*, 78

14

FSupp2d at 221-22 [dismissing Section 20 (a) claim for failing to allege particularized facts demonstrating culpable participation].)

This Court has repeatedly held that the Reform Act's heightened pleading requirements apply to Section 20 (a)'s culpable participation prong (*Burstyn*, 2002 WL 31191741, at *8). Accordingly, a plaintiff must make detailed, individualized allegations of the alleged control person's state of mind: "'[D]etermination of § 20 (a) liability requires an individualized determination of a defendant's control of the primary violator as well as the defendant's particular culpability'....   A complaint that does not contain 'detailed allegations regarding the state of mind of the "control person" must be dismissed'" (*In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *12 [SD NY 2005]; *see also In re Global Crossing, Ltd. Sec. Litig.*, 2006 WL 1628469, at *11 [SD NY 2006] ["[s]imilar to the scienter requirement of Section 10 (b), Section 20 (a) requires that plaintiffs' 'plead with particularity facts giving rise to a strong inference ...'"]).

Pleading culpable participation requires pleading "facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator ... was engaging in fraudulent conduct'" (*In re Global Crossing*, 2005 WL 2990646, at *7).   More than mere negligence is required – namely, "facts supporting a strong inference" that the alleged control person had an "awareness of fraud" (*Id*. at *9 [dismissing control person claims although "control" over the primary violator was adequately alleged because plaintiffs did not "adequately allege that [the defendant] had access to inside information and awareness of fraud under a heightened standard that requires facts supporting a strong inference of such culpability"]).

Here, Plaintiff cannot plead culpable participation as to O'Connor by the expedient allegation that the "fraudulent quotation scheme" that Optionable was engaged in was inherently deceptive and was only possible because O'Connor simply "rubber stamped" whatever inflated

values Lee recorded, thereby failing to prevent its perpetration even though O'Connor possessed the power and obligation to act.  (*see* Am. Compl. ¶ 2, 5.)  These conclusory statements are not allegations of "particularized facts as to the controlling person's culpable participation in the fraud," and therefore add nothing to the Amended Complaint.  (*see In re Am. Bank Note Holographics*, 93 FSupp2d at 448-49.)  As such, O'Connor is not alleged to be a "culpable participant."  (*see e.g. Edison Fund v Cogent Inv. Strategies Fund, Ltd.*, 551 FSupp2d 210, 232 [SD NY 2008] [no culpable participation where complaint "pleads no facts that would give rise to a showing of recklessness or intention" regarding the alleged underlying fraud]; *In re Take-Two Interactive Sec. Litig.*, 551 FSupp2d 247, 307-08 [SD NY 2008] [no culpable participation where complaint fails to allege that individuals with control knew, or were reckless in not knowing, about the alleged fraud].)

The Court's consideration of the scope of the fraud in *In re Global Crossing, Ltd. Sec. Litig.*, 322 FSupp2d 319 (SD NY 2004), does not prove otherwise.  There, unlike here, the complaint contained "over thirty paragraphs" of allegations that the defendant "was well aware that the Companies' books were misleading, and that it played an active role in creating the schemes used to inflate the Companies' revenues" (*Id*. at 346).  There are no allegations here that O'Connor was actually "aware" of the fraud or played "an active role" in those transactions.  (*see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 FSupp2d 429, 457 [SD NY 2005] ["'[M]erely alleging that a particular defendant is a director or an officer of a company is not sufficient to allege control'"].)

Plaintiff has not pled facts that give rise to a strong inference that O'Connor made a misrepresentation during the subject period (or at any other time) with an intent to deceive anyone, with knowledge of its falsity, or with recklessness.  Nor does plaintiff allege that O'Connor had a motive to commit fraud of the kind that will support an inference of scienter.

Such "boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter" (*In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 WL 1234601, at *7 [SD NY 2000]; *see also Novak v Kasaks*, 216 F3d 300, 309 [2d Cir 2000]; *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *6 [SD NY 1998]; *In re Am. Express*, 2004 WL 632750, at *13 n.11 [SD NY 2006]).   Permitting scienter to be inferred from a CEO's access to company records "would expose virtually any CEO, by virtue of his or her position alone, to liability," (*Glickman v Alexander & Alexander Serv., Inc.*, 1996 WL 88570, at *14 [SD NY 1996).   In any event, Plaintiff has completely failed to allege that O'Connor exercised actual control over Optionable or that he "culpably participated" in Optionable's alleged improper conduct.

> c.    The "Group Pleading Doctrine"

The gravamen of Plaintiff's Section 20 (a) claim against O'Connor with respect to his "culpable participation" hinges on the "group pleading doctrine" and/or the alleged "scheme" or "collusion" amongst *all* of the defendants to defraud Optionable's shareholders.   (*see id.* at ¶¶ 2-5, 11, 28-31, 44.)   In fact, Plaintiff makes a plethora of references throughout the Amended Complaint to the alleged "scheme" or "collusion" amongst *all* of the defendants to defraud Optionable's shareholders.   Yet nowhere does Plaintiff allege that O'Connor was individually aware of the fraudulent conduct committed by Optionable.   In fact, Plaintiff thus is reduced to claiming that the defendants, as a group, were engaged in a fraud, based on a series of nebulous and unsupported "facts" that, viewed with the benefit of 20-20 hindsight, should have led them to supposedly discover the fraud long ago.

Even if this were not enough standing alone to warrant dismissing Plaintiff's Section 20 (a) claims – and it is – these claims should also be dismissed because they do not distinguish between O'Connor and the other defendants (*i.e.*, Cassidy and Lee), but indiscriminately clumps

them together, in direct contravention of the Reform Act's mandate that a complaint must allow the Court to undertake an "'individualized determination ... of a defendant's particular culpability'" (*In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1881514, at *12 [SD NY 2005]; *Burstyn*, 2002 WL 31191741, at *8 ["'[D]etermination of [Section] 20 (a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability'"]; *see also Amusement Indus., Inc. v Stern*, No. 07 Civ. 11586 (LAK), 2010 WL 445906, at *15 [SD NY 2010] ["Where fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant"], quoting *Sofi Classic S.A. de C.V. v Hurowitz*, 444 FSupp2d 231, 248-49 [SD NY 2006]).[4]

The "group pleading doctrine" is "'extremely limited in scope[,]'" and applies "'only to clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions'" (*Dresner v Utility.com, Inc.*, 371 FSupp2d 476, 494 [SD NY 2005]).  No such special relationship or access to information is alleged in the Amended Complaint with respect to the documents alleged to contain misstatements and omissions.  (*see also e.g. Geiger v Solomon-Page Group, Ltd.*, 933 FSupp 1180, 1189-90 [SD NY 1996] ["the officers and directors of the issuing company always have a nonspecific interest in a successful IPO.  Allegations of these interests are not of themselves sufficient allegations from which a strong inference of fraudulent intent may be drawn"]; *Kalnit v Eichler*, 264 F3d 131, 140 [2d Cir 2001] [allegation that defendants concealed and misrepresented corporation's financial condition to "protect the lucrative compensation" arrangements "too generalized to support scienter adequately"]; *In re*

---

[4] As set forth above, this broad-brush pleading is insufficient under the Reform Act's exacting pleading standards, which, as stated above, applies to the SEC under these circumstances.  (*see e.g. First Jersey Sec., Inc.*, 101 F3d at 1473-74; *Enterprise Solutions, Inc.*, 142 FSupp2d at 575; *Todd*, 642 F3d at 1223; *Pasternack*, 561 FSupp2d at 503-04; *Chester Holdings, Ltd.*, 41 FSupp2d at 527.)

*Cross Media Mktg. Corp. Sec. Litig.*, 314 FSupp2d 256, 265 [SD NY 2004] [allegations that an individual acted "to enhance the value" of "personal [stock] holdings" inadequate because that motive "could be imputed to any officer of a publicly held corporation"]; *see also In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 WL 1234601, at *7 [recklessness not shown because plaintiffs did not allege (i) defendants "possessed any specific knowledge of the alleged illegal conduct," (ii) "the existence of any specific documents or other information contradicting their public statements that were available" to them, or (iii) that the defendants "failed to review or check information they had a duty to monitor"]; *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *17 [SD NY 2004] [plaintiffs' allegations based on "specul[ation] that the Defendants must have known" of the fraud insufficient in light of their failure to identify any "reports or data" establishing contrast between what the defendants were "hearing internally" and company's public disclosures and thus insufficient to plead scienter].)

Three Courts of Appeals have decided that the "group pleading doctrine" did not survive the requirement in the Reform Act and that misstatements or omissions be pled with particularity against "the defendant," rather than against a group of defendants. (*see Winer Family Trust v Queen*, 503 F3d 319, 334-37 [3d Cir 2007]; *Makor Issues & Rights, Ltd. v Tellabs, Inc.*, 437 F3d 588, 602-03 [7th Cir 2006], *revd on other grounds*, 551 US 308 [2007]; *Southland Sec. Corp.*, 365 F3d at 365.)  Two decisions in this District have reached the very same conclusion.  (*see In re Cross Media Mktg. Corp. Sec. Litig.*, 314 FSupp2d 256, 262 [SD NY 2004]; *Bond Opportunity Fund v Unilab Corp.*, 2003 WL 21058251, at *4 [SD NY 2003].)  In fact, this Court took a similar approach when it held insufficient "blanket references to acts or omissions by all of the defendants, for each defendant … is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged" (*Gurfein v Ameritrade, Inc.*, 411 FSupp2d 416, 426-27 [SD NY 2006]).

19

Here, Plaintiff's endeavor to impute the misconduct of other defendants to O'Connor's alleged reckless disregard of the inaccuracy of Optionable's public statements is insufficient. In fact, Plaintiff does not try to plead a factual connection between any of the individual defendants and the alleged fraudulent transactions, fraudulent accounting for the alleged fraudulent transactions, or overstatements of net income or understatements of operating costs in the various Form 10-KSB's. (*see* Am. Compl. ¶¶ 44-48.) Instead, Plaintiff resorts to allegations that "Lee schemed with the other Defendants to deliberately mismark, and overvalue his trading book from as far back as 2003 until April 2007," or that "Optionable (and in particular Cassidy, O'Connor, and Connor) colluded with Lee so that he could inflate the value of his trading positions." (*see* Am. Compl. ¶¶ 28, 30.) Such an attempt to attach control-liability to O'Connor fails as a matter of law.

Even assuming *arguendo* that the "group pleading doctrine" applies, the group it does not diminish Plaintiff's burden to plead each defendant's scienter. (*see In re Pfizer Inc. Sec. Litig.*, 584 FSupp2d 621, 638 [SD NY 2008]; *In re Citigroup, Inc. Sec. Litig.*, 330 FSupp2d 367, 381 [SD NY 2004].) They must plead with particularity, with respect to each individual defendant, facts that either constitute strong circumstantial evidence of the conscious misconduct or recklessness of that individual defendant, or give rise to a strong inference that that the defendant had both motive and opportunity to commit fraud. Those facts must support "an inference of scienter at least as strong as any opposing inference" (*Tellabs*, 551 US at 326).

    d.   <u>Conclusion</u>

In sum, not only are there no particularized allegations that would, if true, go to the issue of culpable participation, but there are no allegations whatsoever regarding culpable participation on the part of O'Connor individually. Plaintiff has simply evaded its pleading responsibilities on this essential element. (*see generally Lanza v Drexel & Co.*, 479 F2d 1277, 1299 [2d Cir 1973]

["The intent of Congress in adding [Section 20 (a)] ...was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons"].)

This Court should not countenance this effort to ignore well-established Second Circuit precedent, and should dismiss the Section 20 (a) claim for this additional reason.

**B.     ASSUMING *ARGUENDO* THAT THIS COURT DENIES O'CONNOR'S MOTION TO DISMISS PLAINTIFF'S SECTION 20 (a) CLAIM, PLAINTIFF'S SECTION 10 (b) AND RULE 10b-5 CLAIMS AGAINST O'CONNOR SHOULD BE DISMISSED AS A MATTER OF LAW**

As stated above, Plaintiff apparently added Optionable as a defendant to this action in order to satisfy the first element of its Section 20 (a) claim against O'Connor.  O'Connor can only be liable as a control person if the purported "controllee," *i.e.*, Optionable, is properly alleged to have committed a violation of the 1934 Act.  In other words, the control-person claim against O'Connor is completely derivative of the Section 10 (b) and Rule 10b-5 claims against Optionable.  (*see First Jersey Sec., Inc.*, 101 F3d at 1472 [stating that primary violation by controlled person is element of control-person liability].)  Thus, Plaintiff's eleventh-hour Section 10 (b) and Rule 10b-5 claims alleged against Optionable are a transparent attempt to supplement its existent primary liability claims against O'Connor with a control-person liability claim against him as well.

Therefore, assuming *arguendo* that this Court finds that Plaintiff has made a *prima facie* case for control-person liability against O'Connor, it is submitted that the allegations addressing any primary violations committed by O'Connor should be dismissed as a matter of law.  As recent precedent from this Court holds, Plaintiff cannot simultaneously assert both Section 10 (b) and Rule 10b-5 claims as well as a Section 20 (a) claim against the same defendant, *i.e.*, O'Connor.  (*see City of Pontiac Gen. Employees' Ret. Sys. v Lockheed Martin Corp.*, 2012 WL

2866425 [SD NY 2012] [dismissing two counts of the Amended Complaint which asserted claims of control person liability against the Individual Defendants, pursuant to Section 20 (a) by holding that "plaintiff … failed to allege a plausible alternative theory of control person liability against the Individual Defendants pursuant to Section 20 (a) … of the Exchange Act."].)  In *City of Pontiac Gen. Employees' Ret. Sys.*, Justice Rakoff found, in pertinent part:

> Although the Amended Complaint summarily alleges that the Individual Defendants controlled Lockheed Martin, the facts alleged all address the primary violation committed by the Individual Defendants themselves, which is imputed to Lockheed Martin.  [citation omitted].  The Complaint does not allege any plausible alternative theory where defendants are not primary violators and yet can still be held liable on a secondary violation theory through controlling Lockheed Martin.  (s*ee Kalnit v Eichler*, 85 FSupp2d 232, 246 [SD NY 1999], *affd on other grounds* 264 F3d 131 [2d Cir 2001] [dismissing [Section] 20 (a) claim for lack of scienter, and noting that [Section] 20 (a) also failed where plaintiff's theory of case involved individual defendants as primary violators]; *see also PR Diamonds, Inc. v Chandler*, 91 Fed Appx 418, 442 & n.4 [6th Cir 2004] [questioning viability of so-called "double-back" control person liability].)

(*Id*. *15).

Where, as here, O'Connor is already alleged to be primarily liable for violations of the securities laws, it defies logic to assert a secondary liability claim under Section 20 (a) against him − a person cannot be both the controller and the controllee.  Justice Scheindlin concurred with the proposition that a plaintiff cannot use Section 10 (b) and Rule 10b-5 claims against individual defendants as predicates for Section 20 (a) liability.  (*see Kalnit v Eichler*, 85 FSupp2d 232, 246 [SD NY 1999].)  In *Kalnit*, the plaintiff sought to hold the individual directors of MediaOne liable as control persons for misrepresentations and omissions made by them as the Board of MediaOne.  (*id*.)  Although the court held that plaintiff's Section 20 (a) claim must fail because plaintiff did not adequately allege a Section 10 (b) or Rule 10b-5 violation, Justice Scheindlin opined that "even assuming that plaintiff [] adequately stated a claim under Section 10 (b) and Rule 10b–5, the individual directors would not be seen as 'control persons' under

plaintiff's theory of liability… the Directors would be primary violators rather than control persons."  (*id.*)  Accordingly, Plaintiff's Section 20 (a) claim was dismissed as a matter of law pursuant to rule 12 (b) (6).  (*id.*)

The Sixth Circuit agreed with this Circuit, stating that the court would not impute the individual defendants' purported violations of Section 10 (b) and Rule 10b-5 to the company in order to establish the requisite predicate liability of the controlled person, and then "double-back" the liability onto the individual defendants as controlling persons under Section 20 (a).  (*see PR Diamonds, Inc.*, 91 Fed Appx at 442.)   Thus, arguably, a plaintiff may not simultaneously assert both Section 10 (b) and Rule 10b-5 claims and a Section 20 (a) claim against the same defendant.  (*see City of Pontiac, supra; Kalnit, supra; see also Lemmer v Nu-Kote Holding, Inc.*, 2001 WL 1112577, at *12 [ND Tex 2001] ["a [Section] 20 (a) claim cannot be asserted against a defendant who is also charged with primary violation of [Section] 10 (b) and Rule 10b-5; that is, secondary liability under [Section] 20 (a) is an alternative, not a supplement, to primary liability under [Section] 10 (b) and Rule 10b-5."].)

Furthermore, it would undermine the intent of Congress in enacting Section 20 (a) of the Exchange Act if one were able to assert both primary and secondary liability against the same defendant.  (*see Gordon v Burr*, 506 F2d 1080, 1085 [2d Cir 1974] ["The intent of Congress in adding Section [20 (a)] ... was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by the controlled persons."], quoting *Lanza v Drexel & Co.*, 479 F2d 1277, 1299 [2d Cir 1973] [en banc]).

Accordingly, O'Connor respectfully requests that the Court issue an order dismissing the Section 20 (a) claim against him pursuant to rules 9 (b) and 12 (b) (6) of the Federal Rules of Civil Procedure, and, in the alternative, dismissing the section 10 (b) and Rule 10b-5 claims

against him pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure. Based solely upon the underlying claim against Optionable for a primary violation of the securities laws, the section 10 (b) and 10b-5 claims against O'Connor are inconsistent, and should therefore be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, it is clear that Plaintiff's control-person claim against O'Connor does not come close to passing muster, and therefore, the Eighth Cause of Action alleged in the Amended Complaint must be dismissed with prejudice and without leave to amend as against O'Connor. Plaintiff has failed to allege facts sufficient to satisfy two of the three prerequisites for establishing control person liability under Section 20 (a).    Based on this failure, O'Connor respectfully requests that the Court grant his motion pursuant to rules 9 (b) and 12 (b) (6) of the Federal Rules of Civil Procedure, and dismiss Plaintiff's Eighth Cause of Action in the Amended Complaint against him. In the alternative, should this Court deny O'Connor's Motion to Dismiss Plaintiff's Section 20 (a) claim, Plaintiff's First and Second Causes of Action alleged in the Amended Complaint against O'Connor should be dismissed as a matter of law pursuant to rule 12 (b) (6).

Dated: New York, New York
        September 24, 2012

**McCormick & O'Brien, LLP**

By: _Scott D. Smith_

Liam O'Brien (LO-3930)
Scott D. Smith (SS-4727)
9 East 40th Street, Fourth Floor
New York, New York 10016
Tel: 212-286-4471
Fax: 212-504-9574
lobrien@mcoblaw.com
ssmith@mcoblaw.com

*Attorneys for Defendant*
*Edward O'Connor*