UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Securities and Exchange Commission,<br><br>               Plaintiff,<br><br>       -against-<br><br>David Lee, Kevin P. Cassidy,<br>Edward O'Connor, Scott Connor, and<br>Optionable, Inc.<br><br>               Defendants. | No. 08-CV-09961 (GBD) (JLC)<br><br>ECF FILED<br><br>ORAL ARGUMENT REQUESTED |

# DEFENDANT EDWARD O'CONNOR'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS PARTIAL MOTION TO DISMISS

McCormick & O'Brien, LLP

Liam O'Brien
Scott D. Smith
9 East 40th Street, Fourth Floor
New York, New York 10016
Tel: (212) 286-4471
Fax: (212) 504-9574

*Attorneys for Edward O'Connor*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT .........................................................................................................3

   A. PLAINTIFF'S SECTION 10(b) AND RULE 10b-5 CLAIMS AGAINST O'CONNOR SHOULD BE DISMISSED IN LIGHT OF ITS SETTLEMENT WITH OPTIONABLE ............................................................................................. 3

   B. PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD CONTROL PERSON LIABILITY AGAINST O'CONNOR ...............................................................5

      1. There Is No "Control" of Optionable By O'Connor ............................5

      2. There is No "Culpable Participation By O'Connor ............................7

III. CONCLUSION ................................................................................................ ...9

# TABLE OF AUTHORITIES

**Cases**

*AIG*, 741 FSupp2d 511, 534-35 (SD NY 2008) .................................................. 3

*City of Pontiac Gen. Employees' Ret. Sys. v Lockheed Martin Corp.*,
2012 WL 2866425 *43-44 (SD NY 2012) ...................................................... 4

*Food & Allied Serv. Trades Dept., AFL-CIO v Millfeld Trading Co., Inc.*,
841 FSupp 1386, 1391 (SD NY 1994) ........................................................... 5

*Hemming v Alfin Fragrances, Inc.*, 690 FSupp239, 245 (SDNY 1988) ........................... 6

*In re Adelphia*, 398 FSupp2d 244, 261 (SD NY 2005) ............................................ 4

*In re Alstom SA*, 406 FSupp2d 433, 488-89 (SDNY 2005) ........................................ 6

*In re Alstom SA Sec. Litig.*, 454 FSupp2d 187, 210-11 (SD NY 2006) ........................... 3

*In re CIT Grp. Inc. Sec. Litig.*, 2012 WL 2365846 .............................................. 3

*In re Fannie Mae 2008 Sec. Litig.*, 2012 WL 3758537 *7 (SD NY 2012) ......................... 3

*In re Livent, Inc. Sec. Litig.*, 78 FSupp2d 194, 222 (SD NY 1999) ............................. 6

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 2012 WL 25212280 * 9 (SD NY 2012) ................ 3

*In re Moody's Corp. Sec. Litig.*, 599 FSupp2d 493, 517 (SD NY 2009) .......................... 5

*In re Scholastic Corp. Sec. Litig.*, 252 F3d 63, 77 (2d Cir 2001) ............................. 3

*In re Stillwater Capital*, 858 FSupp2d 277, 289 (SDNY 2012) .................................. 3

*In re Par Pharmaceutical, Inc. Sec. Litig.*, 733 FSupp668, 679 (SD NY 1990) .................. 6

*In re Parmalat Sec. Litig.*, 375 FSupp2d 278, 310 (SD NY 2005) ............................. 3-4

*Lewy v SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916 * 11 (SD NY 2012) ....................... 5

*Kalnit v Eichler*, 264 F3d 131, 140 (2d Cir 2001) ............................................. 4

*Police & Fire Ret. Sys. v Safenet, Inc.*, 645 FSupp2d 210, 241 (SDNY 2009) ................... 3

*Sgalambo v McKenzie*, 739 FSupp2d 453, 487 (SD NY 2010) ...................................... 5

**Statutes**

15 U.S.C. § 78t(a) ..................................................................................2, 5, 6, 7, 8

15 U.S.C. § 78j(b) .........................................................................................2, 3, 4

17 C.F.R. § 240.10b-5 ...................................................................................2, 3, 4

Fed.R.Civ.P. 9(b) ..................................................................................................1

Fed.R.Civ.P 12(b)(6) ........................................................................................1, 4

I.  **INTRODUCTION**

Defendant Edward O'Connor ("O'Connor") respectfully submits this Reply Memorandum of Law in response to Plaintiff Securities and Exchange Commission's ("SEC" or "Plaintiff") Opposition Memorandum of Law, and in further support of his motion to dismiss with prejudice the Eighth Cause of Action alleged in the First Amended Complaint ("Amended Complaint") against him filed on or about September 10, 2012, pursuant to rules 9 (b) and 12 (b) (6) of the Federal Rules of Civil Procedure, and, in the alternative, to dismiss with prejudice the First and Second Causes of Action alleged in the Amended Complaint, pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure, and granting such other and further relief as this Court deems just, equitable and proper.

Plaintiff's opposition to O'Connor's partial motion to dismiss is predicated on the assertions that: (i) O'Connor "controlled" Optionable by virtue of his position in the company; (ii) O'Connor "knowingly and actively participated" in Optionable's misconduct; and (iii) control person liability is a separate inquiry from that of primary liability and provides an alternative basis for culpability. (*see* Opposition at 1-2.)

In claiming that it has "adequately pled O'Connor's control-person liability," Plaintiff overstates the facts and offers conclusory assumptions in support of its allegations of "control" and "culpable participation" against O'Connor. These assumptions are flatly contradicted by O'Connor's sworn deposition testimony, as is discussed *infra*. Furthermore, the SEC's assertion that O'Connor's "group pleading" argument is "groundless" is belied by its own Amended Complaint, as set forth previously in O'Connor's original Memorandum of Law.

As to its argument that "sustaining the control person charges does not require dismissing the primary charges against O'Connor," Plaintiff concedes that, while a party may not ultimately

1

be held liable under both Section 10 (b) and Section 20 (a) for the same underlying conduct, it is permissible for Plaintiff to pursue both claims at this stage in the litigation. (*see id.* at 16-18.)

Notwithstanding the legal precedent which O'Connor set forth in his original Memorandum of Law refuting such an assertion, it is telling that Plaintiff makes no mention *anywhere* in its opposition papers that the SEC made an offer of settlement to Optionable, Inc. ("Optionable"), which Optionable has accepted. The settlement includes a provision precluding Optionable from denying the allegations against it as set forth in the Amended Complaint and permanently restraining and enjoining Optionable from violating Section 10 (b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Act"). (*see* Consent of Defendant Optionable, Inc. ("Consent") ¶¶ 2, 10 and Final Judgment as to Defendant Optionable, Inc. ("Final Judgment"), attached to the Declaration of Scott D. Smith as Exhibit A.)

As discussed *infra*, <u>none</u> of the cases relied upon by Plaintiff for the proposition that it is allowed to plead alternative theories of liability at this stage include a scenario where, as here, the primary violator ***has already reached a settlement effectively consenting to a violation of Section 10 (b) and Rule 10b-5*** of the Act. Allowing both 10 (b) and 20 (a) claims to proceed against O'Connor under such circumstances would defy reason.

Furthermore, Plaintiff's failure to disclose its settlement offer with Optionable in its opposition papers as well as Plaintiff's last-minute notice of the executed Consent by Optionable to this Court[1] evinces a disregard for this Court's judicial resources as well as counsel's time by perpetuating two theories of liability against O'Connor, one of which is now a legal

---

[1] On October 17, 2012, Optionable CEO Brad P. O'Sullivan accepted the SEC's offer of settlement and executed the Consent on behalf of Optionable. The SEC received the executed Consent the week of November 5, 2012, which was confirmed by SEC attorney Daniel R. Walfish in a telephonic communication with O'Connor's counsel, Scott D. Smith, on November 16, 2012. Mr. Walfish, however, refused to provide an explanation as to why the Consent and Final Judgment had not been forwarded to the Court, knowing full well that O'Connor's Reply to its Opposition was due on November 21, 2012. On November 20, 2012, at approximately 3:15 p.m., Mr. Walfish sent an e-mail to the Orders and Judgments Clerk of the Court, attaching the executed Consent and Final Judgment, and cc'd all counsel of record.

impossibility. Thus, for the reasons set forth below and in O'Connor's original Memorandum of Law, partial dismissal is warranted.

## II. ARGUMENT

### A. PLAINTIFF'S SECTION 10 (b) AND RULE 10b-5 CLAIMS AGAINST O'CONNOR SHOULD BE DISMISSED IN LIGHT OF ITS SETTLEMENT WITH OPTIONABLE

In its Opposition, the SEC concedes that "[i]t is entirely possible that O'Connor would *not* be primarily liable for an Optionable violation because he did not personally make the misstatement or commit the deceptive act in question..." (*see* Plaintiff's Opposition at 17-18.) Plaintiff goes on to state that, "[al]though O'Connor as an individual may not be primarily liable for [Optionable's CEO Kevin Cassidy's misstatements to investors], the company certainly would be..." (*Id.* at 18.) In light of the SEC's settlement with Optionable, which includes a provision permanently restraining and enjoining Optionable from violating Section 10 (b) and Rule 10b-5 of the Act, O'Connor cannot also be held liable as the primary violator.

Further, the cases relied upon by Plaintiff for the proposition that it is allowed to plead alternative theories of liability at this stage are distinguishable as none allow for the pleading of alternative theories of liability where, as here, the primary violator has already reached a settlement effectively consenting to a violation of Section 10 (b) and Rule 10b-5 of the Act. (*see In re Scholastic Corp Litig.*, 252 F3d 63, 77 [2d Cir 2001] [no settlement with primary violator at pleading stage]; *In re Alstom SA Sec. Litig.*, 454 FSupp2d 187, 210-11 [SD NY 2006] [same]; *In re Fannie Mae 2008 Sec. Litig.*, 2012 WL 3758537 *7 [SD NY 2012] [same]; *AIG*, 741 FSupp2d 511, 534-35 [SD NY 2008] [same]; *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 2012 WL 25212280 * 9 [SD NY 2012] [same]; *In re Stillwater Capital*, 858 FSupp2d 277, 289 [SD NY 2012] [same]; *Police & Fire Ret. Sys. v. Safenet, Inc.*, 645 FSupp2d 210, 241 [SD NY 2009] [same]; *In re CIT Grp. Inc. Sec. Litig.*, 2012 WL 2365846 [SD NY 2010] [same]; *In re Parmalat Sec.*

3

*Litig.*, 375 FSupp2d 278, 310 [SD NY 2005]; *In re Adelphia*, 398 FSupp2d 244, 261 [SD NY 2005] [same].)

Moreover, Plaintiff's attempt to distinguish the respective decisions of Justice Rakoff in *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.* and Justice Schendlin in *Kalnit v. Eichler* from the case at bar is unavailing. First, in both of the aforementioned cases, there was no accepted offer of settlement by the defendant company (*e.g.*, Lockeed Martin) at the pleading stage. (*see City of Pontiac*, 2012 WL 2866425 *43-44 [SD NY 2012].) Second, Plaintiff argues that the Amended Complaint "alleges facts that... support primary liability against [Optionable], but *only* control person, and not primary, liability against O'Connor" (Opposition at 18, emphasis added). While Plaintiff argues that such allegations bolster its claim to plead both primary and control person liability against O'Connor, it does just the opposite – *especially* in light of Optionable's concession to being the primary violator. (*see* Exhibit A.) Last, but certainly not least, Plaintiff's failure to disclose its settlement offer with Optionable in its opposition papers as well as Plaintiff's last-minute notice of the executed Consent by Optionable to this Court (coincidentally one day before this Reply was to be filed and only after a pointed inquiry by our office) evinces a disregard for this Court's judicial resources as well as counsel's time by perpetuating two theories of liability against O'Connor, one of which is now a legal impossibility.

Accordingly, O'Connor respectfully requests that the Court issue an order dismissing the section 10 (b) and Rule 10b-5 claims against him pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure.

B. **PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD CONTROL PERSON LIABILITY AGAINST O'CONNOR**

1. <u>There Is No "Control" of Optionable By O'Connor</u>

Plaintiff's claim that O'Connor "controlled" Optionable is based on two facts: (i) O'Connor's position as a senior officer of Optionable; and (ii) O'Connor's signature on certain SEC filings for Optionable. (*see* Opposition at 8-13.) As to the former, it is well-settled that allegations of "control" by virtue of one's position in a company are insufficient.

The SEC relies on *In re Moody's Corp. Sec. Litig.*, 599 FSupp2d 493, 517 (SD NY 2009) and *Sgalambo v McKenzie*, 739 FSupp2d 453, 487 (SD NY 2010), for the proposition that a "plaintiff may properly plead that an individual defendant had control over a corporate violator by virtue of his status as a high-ranking executive of the company." (*see* Opposition at 8-9.) This proposition, however, is incorrect because <u>both</u> *Moody's* and *Sgalambo* state that the elements needed to plead "control" include the defendant's title as an executive *and* evidence that the defendant has dominion and control, or power and possession over the company's management and policies. (*see id.*) Therefore, the SEC's assertion that a plaintiff may properly plead by virtue of defendant's status as a high-ranking executive, is incomplete, because status, alone, is not enough.

Plaintiff's reliance on *Food & Allied Serv. Trades Dept., AFL-CIO v Millfeld Trading Co., Inc.*, 841 FSupp 1386, 1391 [SD NY 1994] is equally misplaced. While the SEC is correct in stating that Justice Sand ultimately held that the defendants' positions, as Treasurer, CFO and Secretary of the company, strongly suggests that each of them possessed the power to direct the management and policies of the company, the court also found that "[w]hile courts in this circuit have not always agreed on just how much beyond status as a director must be alleged to plead a section 20 (a) claim… they have agreed that a bare allegation of director status, without more, is

5

insufficient." (*see id.*, citing *In re Par Pharmaceutical, Inc. Sec. Litig.*, 733 FSupp668, 679 [SD NY 1990].)[2]

Nor is Plaintiff able to salvage its control person claims against O'Connor with the conclusory assertion that O'Connor approved or signed certain periodic reports filed with the SEC as well as Optionable's Form 10-KSB. (*see* Opposition at 12-13.) The SEC mischaracterizes O'Connor's argument in his original Memorandum of Law by alleging that O'Connor "urges an inference that he was somehow forced to sign his name to the SEC filings..." (*see id.* at 13.) O'Connor merely argues that his signature alone does not satisfy the "control" requirement under Section 20 (a).

The SEC cites *Lewy v SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *11 (SD NY 2012) for the proposition that "signatories of 'public financial reports are deemed to have actual control over the contents of those reports'" (Opposition at 12). Plaintiff, however, replaces the words "officers, directors and audit committee members" used in the *Lewy* with "signatories" in an attempt to focus on the signature itself, rather than on the individual who is signing *and* the signature, as a whole. Furthermore, while the case discusses the definition of "control," the court's statement quoted above was made with respect to the plaintiff's section 15 claim against the defendants, not a section 20 (a) claim.

Finally, *In re Alstom SA*, 406 FSupp2d 433, 488-89 (SD NY 2005) and *In re Livent, Inc. Sec. Litig.*, 78 FSupp2d 194, 222 (SD NY 1999) are both distinguishable from the instant matter. (*see* Opposition at 12.) Although *In Re Alstom SA* and *In re Livent* both state that a "director who signs an SEC filing 'can be presumed to have the power to control those who write the

---

[2] In citing *Hemming v Alfin Fragrances, Inc.*, 690 FSupp239, 245 (SD NY 1988), the SEC argues that this statement addresses "the absence of culpable participation, not the absence of control." (*see* Opposition at 11, footnote 6.) Such interpretation is inaccurate and unduly narrow. Actually, a plaintiff must prove "culpable participation" to sufficiently plead a Section 20 (a) claim *because* a person's status as an officer or director, without more, is insufficient.

report, within the meaning of section 20(a),'" a critical reading of the language in both cases illustrates that this applies to an "outside director and/or audit committee member," not a director, as the SEC states in its parenthetical. As O'Connor was neither an outside director nor an audit committee member, neither applies.

Based on Plaintiff's failure to allege specific facts that would demonstrate the existence of actual "control" beyond O'Connor's position as a senior officer of Optionable and his signature on certain SEC filings, the second element of control-person liability under section 20 (a) has not been satisfied, and, accordingly, that claim should be dismissed.

### 2. There Is No "Culpable Participation" By O'Connor

Even if this Court finds that Plaintiff's control allegations against O'Connor pass muster, its section 20 (a) claim should nevertheless be dismissed because Plaintiff's conclusory assumptions in support of its allegations of "culpable participation" against O'Connor are flatly contradicted by O'Connor's sworn deposition testimony.

In its Opposition, the SEC misleads this Court by using certain words to inaccurately describe the extent of O'Connor's involvement and/or knowledge of the alleged fraud committed by certain individuals and Optionable. For instance, Plaintiff asserts that O'Connor was "*directly* involved" or "*participated*" in a "'*u turn*' process that consisted of collecting David Lee's prices and sending them to BMO's risk management department of third-party quotations" (Opposition at 15, emphasis added). First, the phrase "u turn process" is not a term of art used in the industry; it was created by the SEC to give the Court an inaccurate impression of what O'Connor's understanding of the processes were. Second, no one at BMO *ever* contacted O'Connor to explain either why it was collecting the month-end data, how such data was being utilized, or how it intended the various processes to be handled. (*see* O'Connor Deposition Transcript, October 17, 2012, at 129, ¶¶ 8-25, attached to the Declaration of Scott D. Smith as

7

Exhibit B.) In fact, no one at BMO *ever* communicated to O'Connor to question either the pricing or the processes. (*see id.*) Furthermore, the month-end review of Lee's quotations was exclusively assigned to other Optionable employees (*e.g.*, Scott Connor or Ryan Woodgate), who would ask O'Connor on occasion to review particular pieces of data (*see id.* at 50, ¶¶ 10-22; 62, ¶¶ 2-7; 63, ¶¶ 2-25; 95, ¶¶ 9-24; 112, ¶¶ 15-25.) O'Connor handled the process on only one or two occasions – when Woodgate left the firm and before Connor took over the process. (*see id.* at 95, ¶¶ 9-24; 112, ¶¶ 15-25.)

The SEC also misguides this Court by asserting that O'Connor "*knew* that Cassidy functioned as an executive officer even when he was called a 'consultant,' and the *reason* for obscuring that fact" (Opposition at 15, emphasis added). In actuality, Cassidy's role with Optionable *did* change upon his felony conviction. (*see* O'Connor Deposition Transcript, October 18, 2012, at 297-303, attached to the Declaration of Scott D. Smith as Exhibit C.) O'Connor also testified that Gottbetter & Partners, LLP counseled him regarding the change of Cassidy's classification to "consultant." (*see id.* at 282-83.)

Finally, it is odd that the SEC tries to deny the plain meaning of the language that it utilized in the Amended Complaint with respect to the "group pleading" doctrine, namely its references throughout to the alleged "scheme" or "collusion" amongst *all* of the defendants to defraud Optionable's shareholders, while simultaneously trying to impute liability to O'Connor based on Cassidy's criminal history and O'Connor's knowledge thereof. As previously stated in O'Connor's original Memorandum of Law, O'Connor has never been indicted, convicted, or had criminal charges filed against him.

In sum, any involvement in the aforementioned processes by O'Connor was tangential at best, as there are no established facts whatsoever regarding "culpable participation" on the part

of O'Connor individually. For these reasons, Plaintiff's section 20 (a) claim against O'Connor fails.

## III. CONCLUSION

In light of Optionable's settlement with the SEC, Plaintiff's First and Second Causes of Action alleged in the Amended Complaint as against O'Connor should be dismissed. Further, as Plaintiff's control-person claim against O'Connor also fails, the Eighth Cause of Action alleged in the Amended Complaint should also be dismissed, with prejudice, and without leave to amend.

Dated: New York, New York
November 21, 2012

McCormick & O'Brien, LLP

By: *Scott D. Smith*

Liam O'Brien (LO-3930)
Scott D. Smith (SS-4727)
9 East 40th Street, Fourth Floor
New York, New York 10016
Tel: 212-286-4471
Fax: 212-504-9574
lobrien@mcoblaw.com
ssmith@mcoblaw.com

*Attorneys for Defendant*
*Edward O'Connor*