```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SECURITIES AND EXCHANGE COMMISSION,

 4                   Plaintiff,
                                          08 Civ. 9961 (GBD)
 5          v.                            08 Civ. 9962 (GBD)
                                          09 Civ. 3677 (GBD)
 6   KEVIN CASSIDY, et al.,               09 Civ. 7557 (GBD)

 7                   Defendants.          Conference and Argument

 8   ------------------------------x

 9                                        New York, N.Y.
                                          December 4, 2012
10                                        10:15 a.m.

11   Before:

12          HON. GEORGE B. DANIELS

13                                        District Judge

14
            APPEARANCES
15

16   DANIEL WALFISH
     JOSEPH BORYSHANSKY
17        Attorneys for Plaintiff Securities and Exchange
          Commission
18

19   CHRISTINE RYAL
          Attorney for Plaintiff Commodities Futures Trading
20        Commission

21

22   MCCARTER & ENGLISH
          Attorneys for Plaintiff CM&G NYMEX
     BY:  MINJI KIM
23

24   FRIEDMAN KAPLAN SEILER & ADELMAN LLP
          Attorneys for Plaintiff Bank of Montreal
25   BY:  ROBERT J. LACK
```

APPEARANCES


WHITE & CASE LLP
     Attorneys for Defendant Joseph Saab
BY:  SCOTT HERSHMAN
     OWEN PELL
     MELISSA LAFERRIERE


SOLOMON KLEIN
     Attorney for Defendant Mark Nordlich


LAWRENCE R. GELBER
     Attorney for Defendant Kevin Cassidy


NORTON & ASSOCIATES
     Attorneys for Defendant Optionable, Inc.
BY:  MICHAEL NORTON


MCCORMICK & O'BRIEN LLP
     Attorneys for Defendant Edward O'Connor
BY:  SCOTT D. SMITH

1              (Case called)

2              THE COURT:  As long as the court reporter has

3    everyone's appearance, there is no need to indicate it for the

4    record.  Just indicate who is speaking for the court reporter

5    while you speak.

6              Let me first see where we are with regard to the

7    status of the all of the related cases.  Then we can address

8    Mr. O'Connor's motion.  Let me start with the SEC, Commodities

9    or SEC.  What is the status from your perspective?

10             MR. WALFISH:  Good morning, your Honor.  Daniel

11   Walfish for the SEC.  At the moment deposition discovery is

12   proceeding.  It is going smoothly.  We are trying to meet the

13   schedule that your Honor set at the last status conference on

14   May 31.  Currently, the fact discovery cutoff is set for

15   February 1 of next year.  That's also the date for making

16   expert disclosures.

17             We have been discussing internally that we may want to

18   seek a modest adjustment of that deadline, particularly for the

19   expert disclosures.  We haven't had a chance to discuss that

20   with Mr. O'Connor, who is the only party that we are actively

21   adverse to at this point.  We are confident hopefully that we

22   can work something out offline and submit that on consent.  If

23   not, we will, of course, take up any dispute with the Court.

24             THE COURT:  What is your general proposal at this

25   point?

C64rcon8

 1          MR. WALFISH:  At this point I don't have a general

 2   proposal, but our thought was that an extension of something

 3   like 45 to 60 days might be in order.

 4          THE COURT:  Does anything else actively need to be

 5   done with regard to any of the other cases other than Mr.

 6   O'Connor?

 7          MR. WALFISH:  If you are asking me with respect to the

 8   SEC's case, I can only really speak to the SEC's case.  Nothing

 9   else right now.

10          There is one other open item of business for your

11   Honor, I think, in addition to the motion, which is that we

12   have submitted a consent judgment for the Court's consideration

13   and approval with Optionable, Inc., another of the defendants.

14          THE COURT:  I believe I signed that already yesterday,

15   so it should come up on ECF today.  The clerk's office probably

16   has it.

17          Do I need to hear separately from the CFTC?

18          MS. RYAL:  Christine Ryal for CFTC.  On Friday we

19   filed a motion asking to Court to set a civil monetary penalty

20   amount for Mr. Cassidy, who is the last remaining defendant in

21   our action.  I talked to Mr. Gelber about his briefing time,

22   and we have agreed, if the Court is OK with this, to his

23   replying a reply brief or response brief by January 16th.

24   Then, if a reply is in order, we would ask that we be allowed

25   to file that by January 31.

1          THE COURT:  Let me hear from the defendants.  Anyone

2     else have anything to add with regard to those issues?

3          What I would propose is that I will await the fully

4     submitted CFTC motion and you agree upon what you think is

5     appropriate in terms of the schedule with regard to all the

6     other cases in the meantime, particularly the O'Connor case.  I

7     think it makes sense to, if I'm going to have the motion fully

8     submitted by the end of January, have a conference by the end

9     of February.  We can address the motion, and then you can see

10    in terms of your schedule with regard to other discovery,

11    particularly with regard to expert discovery, where you are at

12    that point.

13         For now let's say 9:30 on the 28th of February, the

14    last day of February.  Let's see where we are then.  I may be

15    on trial starting that Monday for several weeks.  If I'm on

16    trial, we won't be able to do much of substance, but just the

17    motion if it needs to be addressed further.  Let me see where

18    we are at that point and see what the status is.

19         If for some reason we don't need to meet on that date,

20    let me know by letter what the status is, and then we can

21    adjust that schedule.  I think that is probably what makes

22    sense at this point in terms of moving forward efficiently.

23         Is there anything else other than the O'Connor motion

24    that needs to be addressed?

25         MR. HERSHMAN:  Your Honor were you addressing all

6

cases, including the BMO civil case?

THE COURT:  Yes.  I'm sorry, yes.

MR. HERSHMAN:  Your Honor, if I could be heard briefly on that.  Scott Hershman, White & Case, for Joe Saab.  We are not on the same path as the SEC case.  We are not a party to the SEC case nor the CFTC case.

On the matter that we are a party to, which is only the BMO action against Mr. Saab, there is significant discovery to conduct still.  BMO made a representation to the Court back in May that it had produced all documents, and it turns out that that representation was not correct.  As recently as last week, they continued to produce trading data which is incredibly relevant and significant to our defense.  They also recently produced over 22,000 hours of uncategorized audiotapes which we are in the process of listening to and reviewing.

So, we have significant discovery issues that we intend to take up with BMO in meet-and-confers over the next few weeks.  I would recommend or suggest to the Court that we continue to have those meet-and-confers with BMO and attempt in good faith to resolve these issues, and if we can't, then to proceed to put them before Magistrate Cott, who has been very helpful in that regard, and perhaps report back to your Honor at the February date on where we are.

In my estimation, your Honor, it's going to take us a significant period of time to review all of this data that has

1    been produced to us recently, as I said, in the last few weeks.

2    It is a massive amount of data.  Even though the number of

3    pages perhaps was not as great, the number of transactions

4    referenced in the period of time from 2005 to 2007 is huge.  We

5    are finding an incredible amount of exculpatory material in

6    that data and on the audiotapes, and it is quite significant,

7    frankly, to our case.

8          That is one issue.  The other issue relates to the

9    privilege log.  There are over 25,000 items on BMO's privilege

10   log.  We are in the process of perusing all of that, and we

11   will take that up with BMO if the Court permits as well.  We

12   expect through meet-and-confers with BMO we should be able to

13   resolve issues there.  If there is any tail left, we will take

14   that up with Magistrate Cott as well.

15         The concern I have is with the deposition schedule.  I

16   know your Honor set a cutoff date of February 1st for the SEC

17   action, and the SEC now suggests that they are going to ask for

18   a short extension of that.  But that deposition schedule will

19   not serve the civil case, the BMO civil case at all.

20         We would prefer to not have to take depositions twice.

21   I think that was your Honor's intent in trying to have the

22   cases proceed concurrently, but that is going to be become

23   increasingly more difficult as we get closer to the conclusion

24   of the SEC matter when the civil matter with BMO is really in

25   the throes of significant discovery.

1              Perhaps if we can take that up in February as well,

2    when we can report to the Court where we are on all of these

3    open issues discoverywise, and then address the schedule going

4    forward, if that suits the Court, that would be fine with us as

5    well.

6              THE COURT:  See if you can come to some agreement as

7    to how you want to proceed.  Also see if you can resolve

8    whatever outstanding discovery issues there might be by no

9    later than the second week of January.  If there are still

10   issues, you can lay them out clearly for Magistrate Judge Cott

11   so he can hopefully resolve those before we meet the next time

12   so we can go ahead and move forward.

13             To the extent that you can agree, it will probably not

14   be a problem, then I'll approve that.  But get an understanding

15   right away where there is conflict so we can move forward

16   efficiently and see where we are by that time.

17             MR. HERSHMAN:  Very well, your Honor.  Thank you.

18             MR. LACK:  Robert Lack for Bank of Montreal.  The

19   matters Mr. Hershman raised, the issues, this is the first time

20   I heard them.  He hasn't raised them with us.  We are perfectly

21   willing to meet and confer with Mr. Saab's counsel on any

22   discovery issues that may arise.

23             It is true that BMO recently discovered there was

24   additional trading data that had not been produced, and we

25   produced it.  We are in the process of searching for one more

9

1    year of additional data that we may be able to restore and

2    produce.

3           Mr. Hershman may have been under the misimpression

4    that the SEC cutoff applied to the BMO case.  Your Honor never

5    applied a discovery cutoff to the BMO case.  It makes sense to

6    have a later cutoff for the BMO case because there are more

7    issues in that case than in the SEC case.  Mr. Saab, for

8    example, is not a defendant in the SEC case, so the issues

9    relating to him will not be necessary to be explored in the

10   SEC's discovery.  There are also other issues in the BMO case

11   that do not overlap with the SEC's case.

12          Where the SEC has been taking depositions, we have, as

13   you urged us and directed us to do, had those depositions in

14   all cases at once.  We have completed two of those depositions,

15   Mr. Cassidy and Mr. O'Connor, over the period of six days.  We

16   have five additional days of depositions and two additional

17   witnesses scheduled in the near future.  And we expect to

18   continue to coordinate with the SEC.

19          I agree with Mr. Hershman that a later discovery

20   cutoff will be necessary in the BMO case, and I'd be pleased to

21   discuss with him and other defense counsel what that cutoff

22   should be.  As of now we don't have any issues for the Court to

23   resolve.  The issues that Mr. Hershman raised would be

24   appropriately raised with Judge Cott if they could not be

25   resolved by the parties themselves.

```
 1              THE COURT:  The main thing is to have some

 2   understanding among all the parties as to which relevant

 3   depositions are still outstanding so you can come to some early

 4   understanding about when is the appropriate time to take those

 5   depositions.  If there is disagreement about that, then I

 6   imagine Judge Cott can resolve that right away.  It seems to me

 7   it doesn't reflect the document production as it is laid out;

 8   it just affects how all the parties would be prepared for

 9   depositions depending on what other depositions need to be

10   taken.

11              MR. LACK:  That has been how the parties have handled

12   the depositions.  They have noticed the depositions.  If there

13   have been scheduling differences, they have been taken up with

14   Judge Cott and resolved.  I would expect that to be the way it

15   would work going forward.

16              THE COURT:  Thank you.  Anyone else?  Why don't we

17   proceed on that basis.  I'll hear from the SEC and defendant

18   O'Connor with regard to that motion.  Whoever else wants to

19   stick around can, but otherwise we will conclude for the rest

20   of you.

21              (Conference concluded)

22              (10:30 a.m.; counsel for SEC and Edward O'Connor

23   present)

24              THE COURT:  Why don't I hear from Mr. Smith.

25              MR. SMITH:  Yes, sir.  Your Honor, it is our position
```

```
1    that in light of the Optionable consent which your Honor stated

2    that he signed last week, or yesterday, the claims against Mr.

3    O'Connor, the 10b-5 claims, must be dismissed as there cannot

4    be two primary violators.  As Optionable has settled as a

5    primary violator and admitted such, in effect Mr. O'Connor

6    cannot be found liable for 10b-5 ultimately, and therefore

7    those claims must be dismissed.

8         The SEC doesn't cite any case law that supports its

9    position that there can be two primary violators.  In fact,

10   although I didn't cite this case in my brief, the Janus Capital

11   case from the U.S. Supreme Court that was handed down last year

12   got rid of, effectively, aiding and abetting under 10b-5.  It

13   is our position that the SEC is trying to resurrect aiding and

14   abetting under 10b-5 in order to proceed with its 10b-5 claims

15   against Mr. O'Connor.

16        That being said, the SEC actually concedes in its

17   position papers that O'Connor is not the primary violator,

18   which I point out in our reply brief, stating that it is

19   entirely possible that O'Connor would not be primarily liable.

20   And although O'Connor as an individual may not be primarily

21   liable for Optionable's misstatements to investors, the company

22   certainly would be.

23        It added Optionable as a party to its first amended

24   complaint in order to bring control person liability against

25   Mr. O'Connor.  While we argue in our original memorandum that
```

1    there is case law that supports our position that you cannot do

2    so -- we can argue whether or not it can be pleaded in the

3    alternative -- we all know that ultimately Mr. O'Connor cannot

4    be found liable of both.  He cannot be a control person or he

5    cannot be a primary violator.

6         What we have now before us is the settlement with

7    Optionable.  It is our position that based on those facts,

8    based on Optionable's settlement with the SEC, they brought

9    Optionable into the case in their amended complaint in order to

10   hold them as the primary violator so they could assert a 20(a)

11   claim against our client, and based on that we would argue that

12   the 10b-5 claims be dismissed against Mr. O'Connor.

13        In addition, I would touch on the control liability

14   claims as stated in our brief.  It is our position that control

15   has not been established just by virtue of Mr. O'Connor's

16   position.  In addition, even if control was established, Mr.

17   O'Connor's testimony during his deposition clearly refuted the

18   SEC's arguments trying to establish him as a culpable

19   participant.  It is clear that his participation, if any, was

20   tangential at best.  We would also submit that those claims be

21   dismissed as well.

22        THE COURT:  I think I understand your argument, but

23   I'm not sure that it is completely accurate to say one cannot

24   be liable individually directly and liable as a control person

25   at the same time.  I think the law is that you can't be held

 1    liable at the same time for the same conduct.

 2          So the question really is two questions.  One is

 3    whether or not they have a sufficient basis to plead in the

 4    alternative.  I would agree with you that you can't be a

 5    primary violator and a control person violator based on the

 6    same conduct.

 7          Isn't the real question whether or not (1) they have a

 8    basis to plead it in the alternative and (2) whether or not

 9    there is separate individual conduct that supports a primary

10    violation which is different than the conduct that supports the

11    control person?

12          MR. SMITH:  First, your Honor, I would submit that

13    there is not different conduct, that it is the same conduct

14    that they are alleging in the 10b-5 claims against O'Connor as

15    well as the control person.

16          THE COURT:  How would you define that conduct at

17    issue?  What is it that you say they allege happened that would

18    constitute both Optionable's violation and at the same time Mr.

19    O'Connor's individually?

20          MR. SMITH:  They allege involvement in what they refer

21    to as a U-turn scheme, which I stated in our reply brief is a

22    statement that was made up by the SEC.  It is not a term of art

23    in the industry.  I submit that that term is used to color the

24    Court's view of what our client's actual involvement was, if

25    any.  I am aware that our first motion to dismiss was denied,

1    holding up the 10b-5 claims.

2            THE COURT:  Why isn't that law of the case at this

3    point?  They haven't taken anything out in the amended

4    complaint.  They have added more.

5            MR. SMITH:  The settlement with Optionable has a clear

6    effect on that issue.

7            THE COURT:  It may have a clear effect on whether or

8    not O'Connor can also be found liable either as a primary

9    violator or a control person.  Clearly, it doesn't affect

10   whether he was a control person, what Optionable admitted was

11   their conduct.  The question is whether he is a control person

12   still.  How does that preclude or decide the issue of whether

13   he was a control person?

14           MR. SMITH:  I don't believe we are arguing that it

15   precludes.  What I am arguing is that in light of Optionable

16   consenting to essentially violating 10b-5 and appealing to the

17   Court's reason.  There is no definitive case law out there.

18           The SEC cited cases that are completely inapposite in

19   their surreply.  It cites a bankruptcy case where the bank

20   entered a guilty plea and they tried to impute the employees

21   that were acting in the scope of their employment.  It doesn't

22   have anything to do with securities fraud.  They are trying to

23   appeal the agency law there.

24           To the issue of the settling defendant, the cases they

25   cite, there was an issue of standing as to whether the

1   nonsettling defendant can appeal the settlement.  We are not

2   appealing the settling with Optionable.

3              THE COURT:  I don't understand how the admission of

4   securities fraud by Optionable would preclude a finding of

5   liability by anyone else who participated in it.

6              MR. SMITH:  I'm not saying that it precludes a

7   finding.  What I'm saying is that Optionable's consent to

8   violating 10b-5 makes it a primary violator.

9              THE COURT:  Makes it a primary violator.  It doesn't

10  necessarily mean that someone else didn't also primarily

11  violate.  Somebody could have been made their own independent,

12  and that is part of what they allege, that Mr. O'Connor made

13  his own independent misleading statements in furtherance of

14  such a scheme to defraud that was the basis for the original

15  motion.

16             MR. SMITH:  Your Honor, I would respectfully disagree

17  with that statement.  As I stated in our original memorandum of

18  law, while they do make certain individual allegations against

19  O'Connor, the tone of their entire opposition or, I'm sorry,

20  amended complaint is this scheme, this collusion among all of

21  the defendants.

22             THE COURT:  Because that is the nature of this claim.

23  This claim isn't about separate individual conduct in

24  furtherance of the scheme.  That's not the claim.  The claim is

25  the scheme.

```
 1              MR. SMITH:  OK.  But by that --

 2              THE COURT:  More than one person could be primarily

 3    involved in the scheme and take acts in furtherance of the

 4    scheme.  If you say Optionable put out a false statement in

 5    furtherance of the scheme on Monday and Mr. O'Connor put out a

 6    separate statement in furtherance of the scheme on Tuesday, how

 7    is it that both are not primary violators?

 8              MR. SMITH:  I don't think that is what happened here.

 9              THE COURT:  They partially say that he made certain

10    representations in terms of the relationships of companies and

11    he adopted other statements that were publicly made in which he

12    personally was involved in making certain representations.

13              MR. SMITH:  If that's the case --

14              THE COURT:  Isn't that what we discussed the last time

15    we went through the motion?

16              MR. SMITH:  I was not here for the last motion.

17              THE COURT:  You don't get to hide behind that.

18              MR. SMITH:  No, I completely understand that, and I'm

19    not intending to.  I would add that if that is the case and

20    that is the Court's view, then he can't be found liable as a

21    control person.

22              THE COURT:  That's what I'm trying to find out.  I'm

23    trying to key up the issue in terms of where we are today given

24    the status of the case.  I'm not sure what you're arguing.  I

25    understand your argument about primary violator and that the
```

1    evidence doesn't support that Mr. O'Connor is a primary

2    violator.  The problem is we have already been through that

3    argument and it has already been determined that at least the

4    factual allegations that were made specifically regarding Mr.

5    O'Connor and the acts that he was engaged in and certain

6    representations that he made minimally met the pleading

7    standard for the SEC to move forward against Mr. O'Connor.

8          With regard to the primary violation, it seems to me

9    that it is not an appropriate argument at this point to simply

10    argue again that it fails to state a cause of action.  If it's

11    already been ruled that the allegations that it also included

12    in this complaint stated a cause of action against him, we are

13    not to revisit that.  The real question is what's different

14    about this amended complaint that you say is not sustainable.

15          What I understand you saying is different and not

16    sustainable is the fact that they have added a claim for

17    control person.  So isn't the only question then, since they

18    already have what has been determined to be a minimally

19    sufficient set of allegations to state a primary claim against

20    Mr. O'Connor, can they now on top of that and at the same time

21    amend to allege also control person liability, particularly in

22    light of Optionable's admissions since the original complaint?

23    Is that an inaccurate way to characterize where we are?

24          MR. SMITH:  No, your Honor, I agree that is exactly

25    where we are.  I would just add and submit that the adding of

1    Optionable and Optionable's settling of the claims against it

2    do have an effect on your Honor's prior holding that the 10b-5

3    claims against Mr. O'Connor, in light of what I have just

4    argued.

5         THE COURT:  Why would it have any other effect than

6    ultimately determining that they cannot recover on both

7    theories at the end of the day?  They have to recover on one or

8    the other as alternative theories if they are basing it --

9    quite frankly, I think it is broader than both parties have

10   argued.  It is not a question of whether they are basing it on

11   the same conduct.  It is really a question of whether they are

12   basing it on the same scheme to defraud.

13        If I have a scheme to defraud and I'm directing five

14   different people to make false representations and doing acts

15   in furtherance of that scheme, that is not five different

16   schemes.  As a matter of fact, I think the SEC, if I remember

17   correctly, conceded in their opposition to the motion to

18   dismiss the primary claim in the first complaint that --

19        Let me see if I have a reference in my decision.  I

20   had to look at this complaint to see if it is different.  I

21   don't think it is.  They say they were confined and proceeding

22   under sections (a) and (c) of 10b-5 and not subsection (b), and

23   therefore they are not focused on the individual conduct in

24   furtherance of the scheme, they are focused on the scheme.

25        I think they will have to concede when they get up, if

1     that is how they intend to proceed and that's the way this

2     complaint continues to read, that there is no way they can

3     prove more than one scheme.  This is one scheme.  They rely on

4     exactly the same MO and exactly the same results that both

5     Optionable and O'Connor, by their allegation, is involved in.

6              It is clearly not that Optionable is involved in one

7     scheme and O'Connor is alleged to be involved in a different

8     scheme.  In the abstract I agree with you that it doesn't

9     appear that the facts based on those allegations could support

10    separate primary liability and control person liability at the

11    same time.  That's like saying I'm an aider and abettor and a

12    co-conspirator.  Well, you're one or the other.  You can in the

13    abstract say that you are both.  The acts that you commit being

14    one might be the same acts you commit being the other.  But

15    they are not two different bases for independent liability at

16    the same time.

17              If I'm a co-conspirator, then I have primary

18    liability, and I don't have a separate claim for some other

19    liability.  If he is a primary participant in this scheme,

20    wouldn't that make him liable on that basis, and if it turns

21    out that he is simply a control person and the acts that he is

22    taking in furtherance of the scheme are being conducted through

23    the company, if that's what they are relying upon, that would

24    be control person liability.

25              MR. SMITH:  To your Honor's point, if this is one

1    grand scheme, I would argue that there can only be one primary

2    violator of this one scheme.

3           THE COURT:  If there are two people involved in one

4    scheme, why can only one of them --

5           MR. SMITH:  Isn't that the meaning of "primary," that

6    there is one, that Optionable is the primary violator of this

7    scheme?  How can Optionable or Lee or O'Connor or anyone else

8    be a primary violator of this one scheme?  If there were two

9    schemes, maybe that would be a different argument.

10           THE COURT:  It depends.  There is a way to do that.

11    Control person liability is that I am executing my scheme

12    through you by directing you to do things in furtherance of my

13    scheme.

14           Primary liability would be it's both our scheme.  We

15    are sitting down and we both agree that this is what we are

16    going to do.  You're going to take certain independent actions

17    in furtherance of this scheme, A through C, I'm going to take

18    other independent action in furtherance of this scheme, D

19    through F, and we both intend that we are going to primarily do

20    whatever it takes to make this scheme work regardless of

21    whether or not what the other person does is affected.  That

22    doesn't make me a control person.  Not in this context but in a

23    real sense it makes us co-equal co-conspirators who are acting

24    together to obtain a result for themselves.

25           It is awkward for me to think on these set of facts as

1     alleged how it is -- quite frankly, I'm not sure if any

2     individual on these facts is found to be a primary actor, has

3     primary liability.  And it is based solely on the acts that

4     they directed through Optionable, and Optionable doesn't have

5     other, independent acts that make it independently liable.

6          if Mr. O'Connor is alleged to have directed all of his

7     scheme through his control of Optionable, I'm not sure in what

8     way you're going to prove that Optionable is making independent

9     decisions based on its own effort to further the scheme on its

10    behalf, if it's just carrying out Mr. O'Connor's scheme.  It

11    sort of depends on who else is in the scheme and who is

12    considered, quote, to be Optionable.

13         If the acts taken by Optionable are simply at the

14    direction of Mr. O'Connor, if they can prove that, it seems to

15    me that regardless of whether or not Optionable admits to being

16    a primary -- the fact that Optionable admits to being a primary

17    actor here, I don't know any case law that says that that would

18    preclude proving that someone else controlled them and is still

19    independent.

20         MR. SMITH:  No, it doesn't preclude that someone else

21    controlled them.  What I would argue is that if someone

22    controlled them, they can't also be in concert with them or be

23    a primary violator alongside with them.  That would be my

24    argument, and I don't think the facts here support that

25    finding.

```
 1              THE COURT:  You want me to make that conclusion simply
 2    based on their admission that they were a participant in a
 3    scheme.  You're saying unless their admission included a
 4    statement that they were being directed by a control person,
 5    that somehow it precludes somebody else being found to have
 6    controlled them.  I could plead guilty to bank robbery, and
 7    they can still independently prove that you are the one that
 8    paid me to go rob a bank.  It doesn't preclude that they would
 9    admit a primary violation.  It doesn't preclude a factual
10    scenario that would independently demonstrate that O'Connor was
11    the primary actor rather than Optionable.
12              You also have the context of we're talking about a
13    corporate fiction here.  You're not talking about Mr. Smith
14    saying, I was the primary violator, and now they want to say
15    Mr. O'Connor was the primary violator.  I'm not sure I know of
16    any case law that says because the corporation decides to plead
17    guilty to liability, to being involved in a scheme, that that
18    precludes the possibility that the individuals who act or
19    direct corporate officers or others in the corporation, that
20    that precludes finding primary liability with regard to those
21    individuals.
22              MR. SMITH:  That is because there is no case law, your
23    Honor.
24              THE COURT:  Right.  But that makes sense, though.
25              MR. SMITH:  It is an issue for the Court.
```

```
 1              THE COURT:  A corporation doesn't have arms and legs

 2    and a corporation doesn't make statements.  People do so on the

 3    corporation's behalf, and other people direct individuals to do

 4    so on behalf of the corporation.  So there is no real conflict

 5    between a corporation being primarily liable and an individual

 6    being held to be liable as the control person, is there?

 7              MR. SMITH:  I'm sorry, your Honor?

 8              THE COURT:  I said there is no inconsistency with a

 9    corporation being determined to be primarily liable and a

10    person who is determined to be a control person also being

11    determined to be primarily liable.

12              MR. SMITH:  No, but I would argue that there cannot be

13    two primary violators.

14              THE COURT:  I understand that argument in the abstract

15    with regard to --

16              MR. SMITH:  Ultimately, we know that O'Connor cannot

17    be found liable for both.

18              THE COURT:  Right, but that's different.

19              MR. SMITH:  I understand.

20              THE COURT:  Those are different arguments.  I don't

21    think I can accept the premise that there can't be two primary

22    violators.  In many cases there's more than one primary

23    violator.  There are co-defendants all the time who are found

24    to have violated 10b-5.

25              MR. SMITH:  There is no case law that I could find,
```

1    and I'm sure that the SEC could not find as well, that

2    expressly states that, though, that there can be two primary

3    violators.  I would argue that the Janus Capital case goes

4    against that.

5         THE COURT:  It doesn't say that.  Doesn't it say that

6    there can't be a primary violator and someone else who is both

7    a control person violator and a primary violator?

8         MR. SMITH:  It says that you cannot bring an aider and

9    abettor under 10b-5 with the primary violator.

10        THE COURT:  Right.  But that's a different issue.

11   This isn't an aiding and abetting claim.  This isn't that

12   Optionable helped Mr. O'Connor or Mr. O'Connor helped

13   Optionable.  It's a claim that Mr. O'Connor, through the use of

14   the corporation, controlled and directed and allowed the

15   corporation to take acts in furtherance of the scheme that he

16   was primarily involved in.

17        MR. SMITH:  That's a 20(a) claim, not a 10b-5 claim or

18   10(b) claim.  If he used the corporation, controlled the

19   corporation, then that would be control person liability claim,

20   not that he is the primary violator.

21        THE COURT:  To the extent that you are relying on

22   actions in furtherance of that scheme that are not his

23   individual actions.  To the extent that they say he

24   individually made misstatements to further the scheme, he is a

25   primary violator, isn't he?  That's the definition of the

Cc64Jsecm

1    claim, right?

2           If he went out and said, put this false statement in

3    the report, or he went out and made a public representation

4    himself or he hid some information that he knew that he was

5    directly asked about and should have disclosed, regardless of

6    what the corporation did, that would make him primarily liable

7    under 10(b), wouldn't it?

8           MR. SMITH:  Your Honor, I respectfully disagree.  If

9    it was part of what you stated earlier, that this is broader

10   than what the SEC, and we argue that it fit one giant scheme --

11          THE COURT:  Whose scheme is it?  That's the question.

12          MR. SMITH:  It's Optionable's scheme.  They consented.

13          THE COURT:  That's the point.  Optionable can't have a

14   scheme.  Somebody at Optionable comes up with a scheme.

15   Optionable is a corporation.

16          MR. SMITH:  Correct.

17          THE COURT:  The question is, what individual is

18   primarily responsible for the scheme and what acts did that

19   individual take to utilize the corporation and corporate

20   representatives to further that scheme?  That's why to say

21   Optionable is primarily liable for the scheme, well, quite

22   frankly, technically, whether they had control person liability

23   or not, Optionable didn't make up the scheme.  Somebody at

24   Optionable made up the scheme.  That person is clearly

25   primarily liable, right?

C648sem

```
 1              MR. SMITH:  Then what was the purpose of adding
 2    Optionable to the amended complaint?
 3              THE COURT:  Because Optionable under such a theory
 4    would still have corporate liability, right?
 5              MR. SMITH:  Right.
 6              THE COURT:  They are not excused from the acts from
 7    which the corporation benefited.  The theory is that you don't
 8    benefit those who have an interest in the corporation by
 9    letting them use the corporate form to say, I didn't personally
10    make money, it all went into my corporation.  That's the reason
11    for that.
12              A corporation doesn't go to jail.  The corporation has
13    to say, OK, these profits don't belong to the corporation, they
14    belong to someone else because they are ill-gotten gain.  If
15    the corporation admits that it was utilized by individuals to
16    generate that ill-gotten gain, then the corporation clearly has
17    minimal civil liability for that.  And that is independent of
18    whether or not any other people who acted on behalf of the
19    corporation or directed people in the corporation to further
20    the scheme.
21              That is why I don't see inconsistency with Optionable.
22    Optionable, as they say, laid down and played dead, said OK,
23    you got me, I'm done, let's put this behind us, whatever
24    penalties you want, and we'll go, do what you will with the
25    people who made us do it.
```

1          MR. SMITH:  I understand what your Honor is saying.  I

2    would submit that the SEC added Optionable in order to fill

3    that slot of the primary violate and also be able to bring a

4    control person liability claim against Mr. O'Connor, and that

5    primary violator slot has been filled with Optionable.

6          THE COURT:  The inconsistency on that argument is that

7    they had already withstood a motion to dismiss the primary

8    claim against your client.

9          MR. SMITH:  That was before Optionable was added as a

10   party.

11         THE COURT:  That's what I'm saying.  They didn't add

12   Optionable so that they could add a claim against your client.

13   They already had a sustainable claim against your client.

14   Whether they will be able to prove it is a different case.

15         MR. SMITH:  Believe me, it is a mystery to me why they

16   added Optionable and a control person liability claim when they

17   already had a 10b-5 claim against our client that was

18   sustained.  But I will leave that up to the SEC.

19         THE COURT:  Let me let them explain that, and then

20   I'll let you reply.

21         What is supposed to be different now than what existed

22   prior to the amended complaint?

23         MR. WALFISH:  I'm happy to answer that.  May I use the

24   podium, your Honor?

25         THE COURT:  Sure.  Tell me what your theory is.  Let

C64ansecm

1    me start out before you begin.  Are you pursuing these as

2    alternative claims or are you pursuing these as independent

3    claims that you believe can both be sustained at the same time?

4           MR. WALFISH:  I'm sorry, what are the "these"?  The

5    primary claim against Mr. O'Connor and the control person claim

6    against Mr. O'Connor?

7           THE COURT:  Yes.

8           MR. WALFISH:  Yes.

9           THE COURT:  Yes what?

10          MR. WALFISH:  Yes, I understand your question, and I'm

11   about to answer it.  Ultimately, when a jury returns its

12   findings, there is case law to suggest that someone cannot, for

13   the exact same conduct, for the same set of facts, be liable

14   both as a primary violator and as a control person.

15          THE COURT:  So we have an understanding.

16          MR. WALFISH:  We understand that principle.  But what

17   is going on here in our amended complaint is something far

18   different.  For one thing, the conduct that is alleged against

19   Optionable the entity is far broader than the conduct alleged

20   individually against Mr. O'Connor.

21          THE COURT:  But not the conduct that constitutes the

22   offense.  I thought that you went out of your way with regard

23   to the original complaint to say that this is under (a) and (c)

24   and not (b).

25          MR. WALFISH:  Yes, your Honor.  The portion of the

1   decision that your Honor read from was specifically addressed

2   to what was called at the time, quote, the fraudulent scheme

3   claim.  That was Count One of the SEC's complaint.  But Count

4   Two of the SEC's complaint was specifically for misstatements

5   and omissions that the various defendants committed.  The

6   opinion goes on to acknowledge that.

7        We clarified then at the time that we were proceeding

8   under Rule 10b-5(b) with respect to Count Two, charging both

9   Mr. O'Connor and his colleagues at Optionable the company with

10  making misrepresentations and material omissions to investors.

11       So, in the amended complaint what we are saying is

12  because, as your Honor said, companies can only act through

13  human beings, the company Optionable is responsible for the

14  acts, the omissions, and the statements of all of its officers

15  and agents.  That includes Mr. O'Connor and it includes other

16  people, too, including Kevin Cassidy of Optionable.

17       THE COURT:  It is unclear to me how you define the

18  separate conduct that makes Mr. O'Connor primarily liable

19  independently of Optionable and makes Optionable primarily

20  liable for something different.

21       MR. WALFISH:  Your Honor, to the extent that, for

22  example, Kevin Cassidy made statements to investors, that he

23  personally made statements, it might be that for certain of

24  those statements Mr. O'Connor is not individually liable for

25  his own section 10(b)/rule 10b-5 violation.  However, the

1    company Optionable surely would be primarily liable for the

2    statements that another one of its officers makes.

3           THE COURT:  Your amended complaint doesn't allege

4    those as separate claims.

5           MR. WALFISH:  Judge, respectfully, I think we are

6    quite clear in the amended complaint that we are alleging that

7    Mr. O'Connor as a control person of Optionable is liable for

8    everything that the company did.

9           THE COURT:  But that is a different question.  That is

10   not the question.  The way you describe it, that would make it

11   separate claims, right?

12          MR. WALFISH:  I'm sorry, your Honor, I don't agree

13   with that.  I think we are only required in the complaint to

14   particularize statements, omissions, fraudulent acts, and so

15   forth.  Then, at the end of the complaint, in the charging

16   section, we can say there is a claim for relief here, these

17   people made statements and omissions as alleged.  We have

18   particularized the statements that Mr. O'Connor made and that

19   others at Optionable made.

20          THE COURT:  But you don't separate it the way you're

21   trying to argue it here.

22          MR. WALFISH:  We did.

23          THE COURT:  You don't separate that.  You don't say

24   that they are two schemes.  You don't say that certain

25   defendants are liable for certain conduct that other defendants

1   aren't liable for.  That's the way you're arguing it, but

2   that's not the way you have alleged it.  You have alleged that

3   they are involved in the same scheme and are primarily and as

4   control persons liable for the fraudulent conduct.  You don't

5   say that this defendant is liable for conduct A and defendant B

6   is liable for conduct B.

7          MR. WALFISH:  Your Honor, I don't think that is a fair

8   reading of the complaint at all.  If I could direct your

9   attention.

10          THE COURT:  Show me where you have separate conduct

11   that represents separate claims in your amend complaint.

12          MR. WALFISH:  I'll point your Honor to separate

13   conduct.

14          THE COURT:  No, separate conduct that is alleged as

15   separate claims.

16          MR. WALFISH:  Your Honor, I think the cases are clear

17   we don't need to say this is a separate claim in the sense of

18   causes of action.  We say that we have a section 10(b)/Rule

19   10b-5 claim against Mr. O'Connor, against Kevin Cassidy,

20   against Optionable the company.

21          THE COURT:  The same claim or a different claim?

22          MR. WALFISH:  Your Honor, the word "claim," I think

23   there is a lot of elasticity in it.

24          THE COURT:  There is no elasticity for a jury.  For a

25   jury I'm supposed to say these are the elements, you have to

```
 1    find these elements as to this defendant and you have to find
 2    these elements as to this defendant; if you find Mr. Cassidy
 3    did X but Mr. O'Connor wasn't involved in X, then you can only
 4    use that to find a claim against Mr. Casky; if you find that
 5    Mr. O'Connor did Y and Mr. Cassidy didn't do Y, then you can
 6    only use that against Mr. O'Connor.
 7              MR. WALFISH:  That's right.
 8              THE COURT:  That is true with regard to the control
 9    person liability also.  You want to splice it as claims at the
10    same time rather than alternate claims to say that a jury can
11    find that Mr. O'Connor is liable as a primary violator for X
12    conduct but liable only as a control person violator for Y
13    conduct, but that's not the way you lay it out in the
14    complaint.
15              MR. WALFISH:  Your Honor, we don't have to.
16              THE COURT:  You do.
17              MR. WALFISH:  No, we don't.
18              THE COURT:  If you say that there are alternative,
19    independent theories of liability, you must allege it in a way
20    that they can independently be proven regardless of whether the
21    other case is proven.  You don't do that.  You want to get the
22    benefit of lumping it all together, but then you say you want
23    the benefit of being able to ask the jury to find that even if
24    you find that we haven't proven he is primarily liable for this
25    conduct, we have proven that somebody else is liable for this
```

1  conduct and we have proven that he is a control person.  No, I

2  take that back.

3       What you want to do is you want to say that you can

4  get a jury verdict that Mr. O'Connor is both primarily liable

5  and liable as a control person.

6       MR. WALFISH:  For different conduct.

7       THE COURT:  That's what I'm trying to understand.

8  Where in the complaint?  Show me in the complaint where I can

9  read that and find that.

10       MR. WALFISH:  Judge, respectfully, I think the

11  complaint doesn't need to splice it in the way that you are

12  describing.  This complaint, the way that we have let it out,

13  the way we have labeled things, alleged things, the way that we

14  have incorporated them by reference, to my knowledge, is a

15  completely standard way of pleading first primary liability and

16  then control person liability.  I'm not aware of any cases in

17  which claims have been dismissed because of this type of

18  labeling.

19       THE COURT:  Those cases primarily deal with

20  alternative pleading, alternative pleading.  That's why my very

21  first question was whether or not you are strictly arguing that

22  you should be able to say to the jury that you can prove that

23  he was either a control person or he was primarily liable, or

24  are you arguing that you should be able to say to the jury, we

25  want you to give us a determination that he is both primarily

1    liable and liable as a control person, and if that is your

2    theory, what is the different conduct that you lay out in this

3    complaint that would make them understand on what theory is he

4    independently liable for one but not liable for the other?  No,

5    I have to take that back.  On what theory is he independently

6    liable for both at the same time as separate theories of

7    liability?

8         MR. WALFISH:  There are many different ways that could

9    be true.  For example, it might be that he is personally liable

10   only for certain statements that he has made but he is liable

11   as a control person for this U-turn quotation scheme.  Remember

12   that we have both statements to investors and we have the

13   quotation scheme.

14        THE COURT:  But that's alternative pleading.

15        MR. WALFISH:  No, your Honor, absolutely not.

16        THE COURT:  You're saying that you believe, based on

17   the way you have alleged it in this complaint, that you could

18   come back with two findings, one that he is liable as a control

19   person and he is also primarily liable?

20        MR. WALFISH:  Your Honor, I'm saying that we have

21   alleged lots of different --

22        THE COURT:  Answer that question first.  Are you

23   saying that you can ask a jury to render a verdict that he is

24   both liable as a control person independently based on

25   independent conduct and liable as a primarily liable?

```
 1              MR. WALFISH:  Yes, absolutely, the jury can find that,

 2   yes.

 3              THE COURT:  What are the separate facts that support

 4   his control person liability and what are the separate facts

 5   that would support his primary liability?

 6              MR. WALFISH:  Your Honor, I can give some examples of

 7   how that might play out.

 8              THE COURT:  I'd like you to point me in the complaint.

 9              MR. WALFISH:  I will in a moment, but I really want to

10   add something before I direct your attention to some specific

11   portion of the complaint.  It would be up to the jury to decide

12   which facts support primarily liability against this actor or

13   that actor and which facts support control person liability

14   against this actor or that actor, recognizing that if the

15   conduct is precisely congruent, exactly the same, then it is

16   possibly true that someone could be held on both theories.

17              THE COURT:  No, it is not up to the jury.  It is up to

18   you to allege it.  The jury can't figure that out unless you

19   have alleged it.  They can defend against it unless you have

20   alleged it.

21              MR. WALFISH:  This complaint, your Honor, I think is

22   pretty standard.

23              THE COURT:  The standard as an alternative theory of

24   liability, I'm trying to understand in what way you say that he

25   on the one hand has control person liability and on the other
```

1   hand, for other, different conduct, he has --

2         MR. WALFISH:  I'm trying to explain that.  I'm trying

3   to explain that.

4         The complaint alleges, and I can direct you as an

5   example by way of illustration to paragraphs 50 and 51, just as

6   an example.  The complaint alleges statements that Kevin

7   Cassidy made that Edward O'Connor did not make.  Those

8   statements by Kevin Cassidy are manifestly also the statements

9   of Optionable the company.

10        Mr. Smith mentioned the Janus Capital decision, which

11   he didn't cite in any of its papers even though it is a U.S.

12   Supreme Court case decided last year.  He also completely

13   mischaracterized its holding.  But if Janus stands for

14   anything, it is not that there is no such thing as aiding and

15   abetting liability, it is that under Rule 10b-5(b) the maker of

16   a statement is the person who actually utters it rather than

17   other people who are involved.  If Janus stands for anything,

18   it is that.

19        Now, it might be that under that principle or another

20   one, Mr. O'Connor sitting there on this phonecall potentially

21   is not primarily liable for statements that Kevin Cassidy is

22   making to investors.  But Edward O'Connor was surely a control

23   person of Optionable and as such would be liable for statements

24   that the company is making acting through Kevin Cassidy.  That

25   is an example of conduct for which he would be liable as a

1    control person but not primarily.

2            THE COURT:  That's what I'm trying to understand.  Is

3    your theory that you can get a judgment as to both control

4    person and primary liability?  Is the difference between those

5    theories that this complaint is to be read that your claim for

6    primary liability has to do with statements that were made by

7    Mr. O'Connor personally and your theory for control person

8    liability has to do with statements that were made by others

9    and not made by Mr. O'Connor?

10           MR. WALFISH:  Right.  That's how it would play out on

11   a full presentation to the jury and proper jury instructions.

12           THE COURT:  Is there any other theory of simultaneous

13   liability other than you're saying that this amended complaint

14   supports a theory of primary liability for statements and

15   omissions made directly by Mr. O'Connor and control person

16   liability for statements made by Cassidy and others that were

17   made with Mr. O'Connor's knowledge or at his direction?

18           MR. WALFISH:  Yes.

19           THE COURT:  Any other theory?

20           MR. WALFISH:  Yes.  I'm saying yes, we have other

21   theories.

22           THE COURT:  What is the other theory?  Other theory of

23   what?  Other theory of control person liability or other theory

24   of primary?

25           MR. WALFISH:  Both, your Honor.  Please give me a

1    chance to elaborate.  I think I can answer your question.

2    You're asking, apart from people like Kevin Cassidy making

3    misstatements and holding Mr. O'Connor liable as a control

4    person versus as a primary violator, any other facts, any other

5    theory that would support both types of liability.  The answer

6    is yes.

7         With respect to this quotation scheme, we allege that

8    Scott Connor and Kevin Cassidy are essentially recycling

9    quotations that came from David Lee at Bank of Montreal and

10   recycling them to the people of Bank of Montreal supposed to be

11   checking David Lee's quotations.  We also allege that Edward

12   O'Connor did that.  It is entirely possible that Edward

13   O'Connor is primarily liable to the extent that he is

14   personally doing that and that he is liable as a control person

15   to the extent that Optionable is doing that acting through

16   Scott Connor and Kevin Cassidy.  That is claim one.

17        THE COURT:  Do you allege that he personally did that?

18        MR. WALFISH:  Yes.  I can point you to the exact

19   paragraph, if you wish.

20        THE COURT:  Yes, that would help.

21        MR. WALFISH:  Paragraph 32 of amended complaint which

22   was submitted as Exhibit A to our declaration.

23        THE COURT:  I have it.  Paragraph 32.

24        MR. WALFISH:  Yes, page 14.  Paragraph 32 says Mr.

25   O'Connor directly handled this process, personally receiving

1   information and sending it.  It also says he is reviewing and

2   approving other people's work, reassuring them when they

3   express discomfort, telling them where to send the information.

4   This can clearly support primary liability for Mr. O'Connor and

5   control person liability to the extent that it is the company.

6          THE COURT:  That's the part I don't understand.  If he

7   is primarily liable for directing someone to make a

8   misstatement --

9          MR. WALFISH:  I didn't say that he is.  He might be,

10  but I didn't say he was.

11         THE COURT:  What is it you're saying he is primarily

12  liable for?

13         MR. WALFISH:  He is primarily liable to the extent

14  that he personally did something.  And that could include, by

15  the way, aiding and abetting.  Even though we are using the

16  word "primary" here, that includes holding him liable under

17  10(b) for aiding and abetting, which is alive and well in the

18  SEC charges even after Janus.

19         THE COURT:  Aiding and abetting, that is just

20  semantics.  The question is whether he is doing the acts

21  personally.

22         MR. WALFISH:  Right.

23         THE COURT:  Doing the acts through others who are

24  doing it at his direction or whether or not he is helping

25  someone else carry out their independent scheme, legally there

1    is no distinction to be made.  The only legal distinction to be

2    made is whether or not he is a control person or whether or not

3    he is primarily an actor.  If he is an aider and abettor, not a

4    control person, he is primarily an actor, isn't he?

5         MR. WALFISH:  I think that's right.

6         THE COURT:  There is no such thing as had some lesser

7    degree or different degree of participation, or there is no

8    lesser or different degree of participation or liability to be

9    made between someone who you want to characterize as a primary

10   actor or someone you want to characterize as an aider and

11   abettor?

12        MR. WALFISH:  I agree with that, your Honor.  When I

13   say "primary," I'm referring to both of those.  But control

14   person is a slightly lesser standard of involvement.  There are

15   three.  There is the I personally do something, I aid and abet

16   someone else, or I'm liable as a control person of let's say a

17   company who does something.  We have alleged all three.  We

18   don't have to choose right now which it is, and we can take

19   full discovery and then let the jury decide the theories.

20        THE COURT:  I'm trying to get a real understanding

21   other than you have a menu of stuff that you want the jury to

22   be able to decide.  I'm trying to figure out what it is you

23   claim happened and what it is you claim that you are going to

24   prove.  You are still a little vague as to Mr. O'Connor,

25   regardless of any evidence with regard to control person,

1   whether you have independent evidence and made independent

2   sufficient allegations that he himself is a primary violator

3   regardless of the issue of control person.

4           MR. WALFISH:  I don't agree with that, your Honor.

5   The Court has already determined that the initial complaint,

6   which, as your Honor knows, contained less, not more,

7   information than the current complaint, that that initial

8   complaint adequately alleged primary violations against Mr.

9   O'Connor.

10          THE COURT:  That begs the question that has already

11  been raised.  What is the point now at this late stage adding a

12  control person liability?  What kind of theory?  As an

13  additional thing you want to prove or as alternative things you

14  want to prove?

15          MR. WALFISH:  It is as to the same facts an

16  alternative theory of liability, and it is also an additional

17  theory of liability.  It is a lesser standard than the aiding

18  and abetting.

19          THE COURT:  I'm not sure I agree with the way you're

20  characterizing it.  It's a different standard but it is not a

21  lesser standard.

22          MR. WALFISH:  OK.  I might have to respectfully

23  disagree with your Honor's characterization.

24          THE COURT:  If you find somewhere any case that says

25  control liability is a lesser standard, I'd be shocked and

1    surprised.  I think that is the word you chose.  I don't think

2    any case anywhere in the United States refers to control person

3    liability as a, quote, lesser standard.  It is a different

4    standard.

5              MR. WALFISH:  The elements I think are easier to

6    satisfy than for aiding and abetting.

7              THE COURT:  It depends on your facts.  It is not

8    necessarily easier.  It may be easier in this case.  As a

9    matter of fact, you're arguing just the opposite.  It is

10   probably easier for you to prove the primary liability than it

11   is to prove the control person liability because for control

12   person liability all you have to do is identify the false

13   statements he made in furtherance of the scheme.  As to control

14   person liability, you have to identify exactly in what way he

15   was a control person and in what way he had culpable

16   participation.  I'm not sure that that is necessarily any

17   easier or harder.  It depends on your facts.

18             MR. WALFISH:  Your Honor, I think at the pleading

19   stage I think we don't have to do quite as much as Mr. Smith

20   would have it.  If we allege that he was the senior officer at

21   the company, that he knew what was going on, that he was

22   culpably involved in it, that is enough to satisfy the

23   statutory requirements.

24             THE COURT:  It is not typically enough to say that he

25   was an officer of the company so he must have known what was

1    going on.

2         MR. WALFISH:  I respectfully disagree with that.  I

3    think the cases are quite clear that if someone was the CEO as

4    in this case, the CEO of the company, that satisfies the

5    requirement of control.  Although, if someone is senior enough

6    at the company to sign its SEC filings, that, too, is a basis

7    from which to infer control.  I think the cases are very clear.

8    We tried to cite a slew of them in our papers.

9         THE COURT:  The cases are clear with regard to what

10   factors you can consider to decide whether or not there is a

11   reasonable inference of control.  But the cases don't stand for

12   the proposition that simply because you're a CEO, that

13   necessarily means that you have control.

14        MR. WALFISH:  Your Honor, I'm not sure that I agree.

15   I can read to you from cases in this district that essentially

16   say that.  I have them right there at the table, if your Honor

17   wishes.  I don't know if this is what you want me to get into,

18   but I don't agree with your statement, respectfully.

19        THE COURT:  What do you do with the case law that

20   clearly says that a person's status alone is not necessarily

21   sufficient to allege control?

22        MR. WALFISH:  That is an absolute, in my opinion, from

23   Mr. Smith total mischaracterization of what those cases say.

24   What they say is, quote, officer or director -- this is just

25   language, not holding -- officer or director status is not

44

1     enough.

2              THE COURT:  Right.

3              MR. WALFISH:  Please let me explain.  If you look

4     closely, every one of the cases that actually dismisses control

5     person liability on the basis of a pronouncement like that is

6     dealing with an outside director, that is to say, someone who

7     has a seat on the board of directors but no role in the day-to-

8     day management of the company, no idea what is actually going

9     on at the company, sitting in a passive role where a few times

10    a year they take part in board of directors meetings.

11             By contrast, there are cases that specifically say,

12    oh, yeah, we were a little bit too loose when we said officer

13    or director status is not enough, because if you are the CEO of

14    a company, that is enough to infer control.  Like I said, I can

15    read specifically, although we cite them in our brief, cases

16    where judges from this district say plaintiff alleged that this

17    person had a senior role, that is enough of a basis from which

18    to conclude that that person had policy-making power at the

19    company.  I can offer those cites if your Honor wishes.

20             THE COURT:  I think you have them cited in your brief.

21             MR. WALFISH:  I do, yes.

22             There are other issues I'd like to cover, unless your

23    Honor has anything further.

24             THE COURT:  No, go ahead.

25             MR. WALFISH:  Thank you.  The settlement with

1  Optionable formally is not an admission of liability.  By the

2  plain terms of the consent that Optionable signed, they are not

3  admitting or denying liability.  I understand that there is a

4  perception that somebody only settles one of these things

5  because they think that they are guilty somehow.  That's fine.

6         But if Mr. Smith is right that merely settling is an

7  admission of liability that furthermore displaces the

8  possibility that anybody else is a primary violator, then Scott

9  Connor's consent in this action a few years ago would have

10  prevented Mr. O'Connor and Kevin Cassidy from being primary

11  violators.  So, too, would David Lee's consent earlier, again a

12  few years ago, displaced the possibility that Kevin Cassidy,

13  currently in jail for fraud on these allegations, was a primary

14  violator.  That surely is not the law.

15         If I could check my notes and see if I have any other

16  points that I wanted to cover?

17         THE COURT:  OK.

18         MR. WALFISH:  Your Honor, Mr. Smith mentions Mr.

19  O'Connor's recent deposition testimony.  I hope the Court will

20  appreciate that under the Federal Rules of Civil Procedure that

21  is simply not a proper subject of consideration here.  It is

22  clear that if that testimony is in any way considered, then we

23  get a chance to make a full evidentiary submission, because the

24  motion would have been automatically converted to one for

25  summary judgment.

```
 1              Even setting all those points aside, though, if one
 2     looks closely at that deposition, I think from it alone, let
 3     alone what we have gotten and will continue to get from other
 4     witnesses, it actually would allow a fact-finder to conclude
 5     that this person is quite culpable on a number of different
 6     theories.
 7              I think that is pretty much all that I have.  Unless
 8     the Court has further questions.
 9              THE COURT:  No.  Thank you.
10              MR. WALFISH:  Thank you.
11              THE COURT:  Mr. Smith, did you want to reply?
12              MR. SMITH:  I want to add that to the issue of whether
13     or not control is on the basis of status alone, we cited case
14     law that stands for just the opposite of what the SEC has
15     stated in its opposition from this court where just being a CFO
16     or CEO alone does not rise to the level of control.  There's
17     got to be something in addition to that.
18              THE COURT:  It seems to me that the control issue
19     isn't the determinative issue.  The determinative issue is what
20     was the mental state of the defendant.  To the extent that the
21     complaint alleges that certain conduct was engaged in
22     consistent with the scheme, whether he is a control person or
23     not doesn't prove the case.  You could be a control person, and
24     it doesn't make you liable, give you all of the elements of
25     control liability.
```

1              You also have to be able to demonstrate, and more

2     importantly demonstrate, that it is reasonable to infer that

3     the acts of the corporation were taken in furtherance of the

4     scheme that has to be independently proven by the plaintiff.

5     Just because Bill Gates is the control person of Microsoft

6     doesn't mean that the guy who is stealing paperclips on the

7     fifth floor is under his control with regard to the illegal

8     activity that he may be involved in.

9              I don't think most cases address it this way, but in

10    most cases it is not an issue, because what is more

11    determinative is whether or not there is an inference that the

12    acts are being taken by the corporation that constitute a

13    violation that is clearly being done at the behest of the

14    plaintiff or with the plaintiff recklessly disregarding the

15    possibility that that is going on.  That is the determinative

16    issue rather than whether or not the person is the boss.

17             MR. SMITH:  That's correct, your Honor.

18             THE COURT:  We know he's the boss.  That doesn't mean

19    that the control liability is whether or not there is an

20    inference that he is controlling the activity that is at issue

21    here.

22             MR. SMITH:  That's correct, your Honor.  I would

23    submit, and we set forth in our motion papers, that it does not

24    rise to that level, that the SEC has failed to prove or allege

25    facts that would be sufficient to allege culpable

1   participation.

2          THE COURT:  It's awkward to try to do that

3   independently in most cases.  If you take their allegation that

4   he was both personally involved in and was aware of the

5   activities of others with regard to the U-turn activity and

6   that it is reasonable to infer that those people who were

7   involved in that activity knew that that was fraudulent

8   activity, there is not a whole bunch of question about whether

9   or not, if in fact they can prove that he did that and did that

10   in his capacity as a CEO, you would have to prove a whole lot

11   more to prove that he is a control person.

12          MR. SMITH:  Right.

13          THE COURT:  If he knows what Cassidy is doing and he

14   is directing or acquiescing in what Cassidy is doing or it can

15   be inferred that other people in the company are doing things

16   on his behalf, this scheme that they have independently proven,

17   then I don't think that the determinative issue is whether or

18   not there is enough evidence as a control person.  They usually

19   go hand in hand.

20          The only other thing I'll give you a chance to

21   address, you raised the Optionable settlement at first.  They

22   validly point out, and I don't have the settlement agreement in

23   front of me, but they validly point out, I assume correctly so,

24   that the Optionable settlement does not include any admission

25   of liability.

```
 1              How do you rely upon the mere settlement as somehow an
 2    admission of liability that should have some preclusive effect?
 3    I assume if your client decides to settle, under those terms
 4    you're not going to allow anybody to say that that's an
 5    admission that he was involved in certain misconduct if the
 6    settlement specifically says it's not an admission.
 7              MR. SMITH:  That is an accurate statement, that in the
 8    consent Optionable does not expressly admit to violating 10b-5.
 9    It enjoins them, if I recall correctly -- I don't have the
10    consent in front of me -- from violating, and it lists a number
11    of sections.
12              THE COURT:  It says don't do the things that you
13    shouldn't be doing in the first place.
14              MR. SMITH:  It can be inferred.  I would submit that
15    based on the amended complaint, in adding Optionable and adding
16    a control person liability claim against Mr. O'Connor, it is
17    clear to us, and that's why I am submitting to the Court that
18    in this settlement, in effect, Optionable is admitting to being
19    the primary violator under 10b-5.
20              THE COURT:  They are not admitting to being any
21    violator.
22              MR. SMITH:  Right, I understand that.
23              THE COURT:  They are saying go away, what do you want.
24              MR. SMITH:  That's why I say "in effect."
25              THE COURT:  It's obvious that it is not an argument to
```

1    be made that that legally precludes them from proceeding

2    against any other defendant on any other theory because

3    Optionable decided that they wanted to get out.

4           MR. SMITH:  I wouldn't necessarily use the word

5    "preclude."  I would say that --

6           THE COURT:  How does that make their complaint

7    insufficiently pled?

8           MR. SMITH:  If they have sufficiently pled 10b-5

9    against Mr. O'Connor and, as they pointed out, this Court has

10   already denied our previous motion to dismiss based on the

11   primary liability claims against Mr. O'Connor, then I would, as

12   I do in our motion papers, say that their control liability

13   claims against Mr. O'Connor are insufficient and therefore

14   should be dismissed.  The facts as alleged in the complaint do

15   not rise to a level of control.  And even if it was determined

16   that the control element was satisfied, they haven't satisfied

17   the culpable participation element.

18          THE COURT:  What do you say they need to allege

19   further in this case?  Given his position, status, and holdings

20   and influence, what else do you say they need to allege to

21   allege that somebody is a control person?

22          MR. SMITH:  I would submit that they haven't alleged

23   necessarily that he had dominion or control over certain

24   employees.  They are hanging their hat on the fact that he

25   signed certain year-end statements or reports to the SEC,

```
 1   10-KSBs.

 2           THE COURT:  That is not what they are primarily

 3   hanging their hat on.  They are primarily hanging their hat on

 4   as the CEO he is the boss and he is in charge of all these

 5   people.  He tells them what to do, he fires them, he hires

 6   them.

 7           MR. SMITH:  I would go back to what our position is,

 8   that status alone does not translate into control, does not

 9   equal control for purposes of 20(a), there's got to be

10   something more.

11           THE COURT:  What more?  That's what I'm trying to get

12   from you.  He is the boss, he is in charge of everybody, he

13   knows about all of this activity, and he has not only delegated

14   those responsibilities with regard to the conduct at issue, he

15   is personally involved and knowledgeable at the conduct at

16   issue.  Why wouldn't that be sufficient as a control person if

17   you are aware of and/or directing and/or participating in

18   furthering the conduct that they claim is the actionable

19   conduct?

20           MR. SMITH:  If you are the CEO and you do have

21   dominion or control or power or possession over the acts of

22   certain employees, that would satisfy, or may satisfy I should

23   say, that one element of control.  But you still have to

24   satisfy the culpable participation element.

25           THE COURT:  We have been through the culpable
```

```
 1    participation argument several times.  That takes us back to

 2    where we started.  They originally alleged his culpable

 3    participation sufficiently in the first complaint.

 4              MR. SMITH:  In the first complaint, though, there was

 5    no control person liability.

 6              THE COURT:  But control person liability doesn't

 7    define culpable participation.

 8              MR. SMITH:  I understand.

 9              THE COURT:  Either there was culpable participation on

10    any level or there wasn't.  That's not the element that defines

11    whether you're a control person.

12              MR. SMITH:  I understand, your Honor.

13              THE COURT:  The element is what the nature and extent

14    of that direct or indirect culpable participation is.

15              MR. SMITH:  I understand.  To your Honor's point, the

16    SEC would be using the same facts that were alleged to

17    establish primary liability as satisfying the culpable

18    participation element as well.

19              THE COURT:  There is nothing wrong with that.  You

20    would need culpable participation whether you're a control

21    person or primarily liable.  The same conduct that equals

22    culpable participation as a control person, at least one's

23    knowledge and mens rea, one's knowledge and understanding and

24    intent to further the scheme is exactly the same regardless of

25    whether you're a control person, not a primary person.  The
```

1    mental state is the same.

2          And clearly the operative acts are whether or not you

3    are taking any steps to further that scheme, whether you're

4    taking steps to further that scheme by taking individual action

5    or by directing others or having others take action on your

6    behalf.  That doesn't define the culpable participation.  The

7    culpable participation is are you doing it with the

8    understanding that you are defrauding people.  That's exactly

9    the same whether you are a control person or a primary.

10         MR. SMITH:  I understand.  I was just addressing your

11   Honor's earlier comments about distinguishing between are these

12   two theories based on the same set of facts or are there

13   different facts that support each individual theory.  I was

14   just addressing that.  I would still submit, your Honor, that

15   the facts as alleged do not rise to the level of culpable

16   participation.

17         THE COURT:  Thank you.

18         Is there something you wanted to add?

19         MR. WALFISH:  Just a very small point, your Honor.

20   You used the example of Microsoft and Bill Gates and the guy

21   maybe in the mailroom who is stealing paperclips.  The only

22   thing I want to emphasize here is that Optionable is nothing

23   like that.  This was a company with about 18 employees, all

24   working together in the same room.  Essentially, Mr. O'Connor

25   knew what was going on at Optionable because he was working

1       alongside everybody all day long.  That's all on that.

2              THE COURT:  Are any of those facts alleged in this

3       complaint?

4              MR. WALFISH:  The SEC filings of Optionable, which can

5       be considered on a motion addressed to the pleading, make that

6       clear.  And we have citations to that SEC filing.

7              THE COURT:  I remember you making that point, but I

8       couldn't remember whether or not that point was simply made in

9       your brief or whether or not there was a section in the

10      complaint that lays out that this is more akin to a small,

11      closely held company and that is what you alleged in the

12      complaint is a basis to find that.  But at this point you're

13      saying that I should at least incorporate that by reference,

14      the SEC filing?

15             MR. WALFISH:  Yes, absolutely.  We do cite the SEC

16      filing in our complaint.  And even if we hadn't cited the SEC

17      filing, although we do, I think the cases are clear that you

18      can't consider deposition testimony but you can consider things

19      in the SEC filings like that, particularly when we have already

20      referenced the filing.  But your Honor is absolutely right,

21      those specifics about the number of employees and the square

22      footage of the office space are not actually in the complaint.

23      You're absolutely right about that.

24             THE COURT:  I didn't quite get, and I'll hear from Mr.

25      Smith quickly, I didn't quite get exactly what I was supposed

1   to pull out of the deposition.  What are the facts that you say

2   would be improper for me to pull out of the deposition that you

3   are concerned with?

4           MR. WALFISH:  Your Honor, Rule 12, if you do consider

5   the deposition, I think a fact-finder would see a sufficient

6   basis to conclude that this guy bears responsibility.  But you

7   are not supposed to be looking at the deposition on a motion

8   addressed to the pleading.  Rule 12(d) of the Federal Rules of

9   Civil Procedure could not be clearer on that point.  It says if

10  you consider this deposition, this motion automatically becomes

11  one for summary judgment and we get a chance to make a full

12  evidentiary submission, which we are happy to do at the

13  appropriate time.

14          THE COURT:  I'm not sure I clearly understand what it

15  is that you think they are urging me to conclude from the

16  deposition that you say that I should not conclude from the

17  deposition.

18          MR. WALFISH:  Judge, I'm sorry, I'm not sure that I

19  understand the question.

20          THE COURT:  You raised the issue today that I

21  shouldn't consider things in the deposition in order to support

22  their motion.

23          MR. WALFISH:  Yes.

24          THE COURT:  Slow down.  I'm just asking you, since you

25  raised it, what is it that you think they are trying to urge me

1    to conclude from the deposition?

2           MR. WALFISH:  I think I understand your question.

3    You're asking me why did Mr. Smith decide in his reply brief to

4    cite the deposition?

5           THE COURT:  No.  I'm asking you what is it about

6    citing it, what is it about the deposition that you say he is

7    urging me to conclude that you are concerned is improper to

8    conclude.  Are you just making this argument in the abstract

9    procedurally, or is there really something that you are

10   concerned about that he is asking me to take from this

11   deposition that supports his claim that you say I shouldn't

12   accept?  Just because Mr. O'Connor said it.

13          MR. WALFISH:  Both and more.

14          THE COURT:  What is the substance of it?

15          MR. WALFISH:  First of all, his citations to the

16   deposition don't show that Mr. O'Connor is an innocent man.  If

17   anything, they show the opposite.

18          THE COURT:  I know.  But what do you care?  I'm just

19   asking you specifically in the deposition, is this just

20   rhetoric or is there anything specifically in the deposition

21   that you say he is trying to urge me to utilize as a fact in

22   his favor that you say would be improper for me to conclude

23   that?  I don't understand.

24          MR. WALFISH:  This is not the time to review evidence.

25   This is a motion addressed to the pleading.

```
 1              THE COURT:  I understand that.  You're not answering
 2     my question.  The answer is you don't have a clue as to what he
 3     wants me to take from that deposition that he would be arguing
 4     that is helpful to him?
 5              MR. WALFISH:  I read his reply brief, and he is saying
 6     that the deposition shows that Mr. O'Connor is an innocent man.
 7              THE COURT:  In what way?
 8              MR. WALFISH:  Ask Mr. Smith.
 9              THE COURT:  In what way are you concerned about me not
10     doing that?  You're the one who said, don't do it, Judge.
11     Don't do what?
12              MR. WALFISH:  If your Honor accepts the interpretation
13     of this completely improperly submitted deposition record by
14     Mr. Smith rather than the factual interpretation of a
15     deposition that we would offer, then that would be I think a
16     mistake.
17              THE COURT:  I don't interpret depositions.  I'm just
18     trying to figure out is there a fact that somebody said that
19     you are concerned about that Mr. O'Connor said?  Is there
20     something that I should make sure that I don't think I know
21     because I saw it in the deposition that you are concerned
22     about?  Or are you just in the abstract arguing that it is
23     improper to consider the deposition?
24              MR. WALFISH:  Both.
25              THE COURT:  I don't hear you articulating anything at
```

1    all that is in the deposition that you are concerned I might

2    misuse.

3              MR. WALFISH:  Your Honor, I agree with you up to a

4    point.  Mr. Smith says that the deposition --

5              THE COURT:  Where are you citing from?

6              MR. WALFISH:  His reply brief page 7.  He says that

7    the SEC has misled the Court through its amended complaint

8    because Mr. O'Connor proclaims his innocence in the deposition.

9    First of all, Mr. O'Connor doesn't proclaim his innocence in

10   the deposition.  Second of all, even if he did, this argument

11   would be like saying that if you have indicted a criminal

12   defendant, then the moment that the criminal defendant either

13   pleads not guilty or offers an alibi at trial, instantly the

14   indictment has to be dismissed.  It's ridiculous.

15             THE COURT:  Your point is simply that I shouldn't

16   conclude that he is not liable, because he said so in his

17   deposition?

18             MR. WALFISH:  Yes.  Also, if one were to look closely

19   at his deposition, which I don't advise doing, at least at this

20   stage, one will I think reach the opposite conclusion, that he

21   is liable.  That's all.

22             THE COURT:  Mr. Smith, what is it about the deposition

23   that advances your argument one way or the other?

24             MR. SMITH:  Your Honor, I merely cited to the

25   deposition in order to refute the SEC's allegations that

 1  O'Connor, and I point this out in the reply, was directly

 2  involved or directly participated.

 3      THE COURT:  Because in his deposition he says he

 4  wasn't directly involved?

 5      MR. SMITH:  Correct.  I don't say anything, I don't

 6  proclaim, I don't use the word "innocence" at all.  I don't

 7  remember using that term.  That is something that Mr. Walfish

 8  just inaccurately stated.  We were merely trying to refute the

 9  SEC's allegations that he was directly involved or directly

10  participated.  We leave it to the Court.

11      THE COURT:  Where are we in terms of discovery?  What

12  else needs to be done?

13      MR. WALFISH:  May I?

14      THE COURT:  Yes.

15      MR. WALFISH:  Your Honor, at the moment two additional

16  depositions have been scheduled and we anticipate that there

17  may be additional ones.  That's what we were trying to convey

18  to the Court.

19      THE COURT:  Pretty much substantially the document

20  production has been exchanged?

21      MR. WALFISH:  Substantially, yes.  There may be

22  disputes, but we don't need to --

23      THE COURT:  For the most part you both have most of

24  what there is to have?

25      MR. WALFISH:  That's a fair statement.

```
 1              THE COURT:  You need to take what kind of deposition?
 2  Who's left?
 3              MR. SMITH:  Lee is left.  Connor is left, correct, if
 4  I'm not mistaken.  Then there may be some other people that the
 5  defendants wish to notice.  We are still working that out.  It
 6  could be other employees.  We don't know yet.  But I know Lee's
 7  deposition.
 8              MR. WALFISH:  Judge, if the Court wants a full factual
 9  consideration of O'Connor's guilt or not, we would come forward
10  with another deposition that was taken at which Kevin Cassidy
11  says, yes, Mr. O'Connor was involved.  We could come forward
12  with evidence from other witnesses.
13              THE COURT:  I'm just trying to figure out whether I'm
14  going to have to be going through this exercise for a third
15  time very soon based on a summary judgment motion.  It seems to
16  me that whatever is known in terms of what the proof is going
17  to be is pretty much already known.
18              MR. WALFISH:  Much of it, not all of it.  Some of it
19  is known.  Some of it has yet to be developed in the form of
20  actual testimony or declarations, and so on, of a number of
21  witnesses.
22              THE COURT:  Who have not yet been deposed, is that
23  what you are saying?
24              MR. WALFISH:  Correct.
25              THE COURT:  That's what I'm trying to get a feel for.
```

1   Who else?

2           MR. WALFISH:  If this were a summary judgment motion,

3   which this is not, as opposed to one addressed to the pleading,

4   what we would put in is not just Mr. O'Connor's declaration,

5   incorrectly characterized as exculpating him, we would also put

6   in Mr. Cassidy's deposition inculpating Mr. O'Connor.  We would

7   put in statements from other witnesses, declarations, and

8   documents all showing that Mr. O'Connor knew what was going on.

9           THE COURT:  You misinterpreted the thrust of my

10  question.  My question had nothing to do with that issue.

11          MR. WALFISH:  I'm sorry.

12          THE COURT:  I just wanted to know where you are in

13  terms of the proceeding.  At this point, quite frankly, it

14  seems to me that I'm not going to go back and review this any

15  further.  I'm going to go ahead and deny the motion.  I think

16  on the record here the amended complaint is as sufficient as it

17  originally was before it was amended to allege a claim against

18  Mr. O'Connor.  I'm not going to revisit that.  So Mr. O'Connor

19  still must defend against those primary claims.

20          The question of whether or not the government will

21  have an opportunity based on this complaint as it is alleged to

22  present a case of control liability either as an alternative

23  theory or as an additional theory I think remains to be seen.

24  I think the factual allegations in this complaint, and I think

25  at this point I'll only need to make this determination, the

 1  factual allegations in this complaint, if the government can

 2  prove most or all of these facts, would be sufficient to prove

 3  one or the other.  That's all I need at this point.

 4          Whether or not it's sufficient to prove both or

 5  whether or not at the conclusion of discovery one or both

 6  should be dismissed on summary judgment, the facts do not

 7  support the allegations in the complaint, or whether or not the

 8  case goes to trial and the government is forced to choose,

 9  based on the facts as they say they intend to prove them, a

10  theory of what they intend to prove depending on what facts

11  they say exist is a different question.

12          In terms of the allegations, the bare minimal

13  allegations that have been made, I think the bare minimal

14  allegations made in this complaint indicate that the

15  government, if they were able to prove what they say they can

16  prove, puts the defendant on notice that they believe that he

17  took action in furtherance of a scheme to defraud that they

18  described as the U-turn scenario and that he was fully

19  knowledgeable about what was occurring, that what was occurring

20  was inconsistent with the representations that he was

21  personally making about the circumstances and inconsistent with

22  what others were making statements about the circumstances, and

23  that therefore if they can prove that he in fact were making

24  representations or allowing people or leading people to believe

25  that a different review and evaluation was being conducted even

 1  though they, a number of individuals, were simply knowingly

 2  regurgitating facts and recirculating facts that did not allow

 3  for any substantial review or check, and if in fact the

 4  government is able to prove that they were hired to do

 5  otherwise but was misrepresenting or misleading or omitting to

 6  indicate in a material way that in fact what the expectation

 7  was and promise was not being met, then I think the government

 8  will have a theory to sustain such a claim if they convince a

 9  jury that such facts exist that would meet the elements of that

10  claim.

11      That theory, as I say, given the way it is alleged,

12  will be minimally at least a theory of either control liability

13  or a theory of actual direct primary liability based on the

14  defendant's own act.  Whether or not it will be both, I think

15  that that remains to be seen.

16      I am not ultimately yet convinced that the way it's

17  alleged, the government can proceed separately and get at the

18  same time both types of claims.  That I don't think makes the

19  complaint itself fatally deficient.  As long as at least one of

20  those theories of liability can be sustained based upon a set

21  of facts that would be consistent and support the allegations

22  that have been made in the complaint, I think the allegations

23  being made in the complaint could put the defendant on notice

24  of a circumstance under which, if the SEC were to be able to

25  prove the allegations as they minimally allege in this

C84asoenm

 1    complaint, it could sustain liability on the part of Mr.

 2    O'Connor.

 3            Whether or not that's the case or not, that is not the

 4    examination at this point.  If it's appropriate as we are

 5    nearing the close of discovery to revisit this based on whether

 6    or not there is a fact or facts that do support the allegations

 7    as made, the fraud allegations, fraudulent conduct allegations

 8    made in the complaint, that I can revisit that on a full record

 9    and force the government to specifically articulate, based on

10    what specific evidence they believe they would be able to

11    sustain, a claim on the different theories of liability that

12    they are putting forth.

13            Even beyond that, if summary judgment is denied, they

14    still have an opportunity to limit the nature of the proof or

15    the legitimate nature of the proffered claims for a jury's

16    consideration depending on what set of facts are available for

17    the jury to consider.  As I always say, you can have

18    alternative theories but you cannot have alternative facts.

19            Only one thing happened.  You have to make up your

20    mind what it is that you say the facts demonstrate that

21    happened and figure out whether or not those facts sustain one

22    or both theories or simply is a scenario that if the jury

23    accepts the evidence as proffered by the government, there is

24    only one conclusion that they could validly reach.

25            If that's the case, then the question is simply a

1    question of determining whether or not the evidence is strong

2    enough to support that conclusion as opposed to, based on the

3    set of facts, a menu of different theories, that if the jury

4    accepts one set of facts, it's one kind of case, and if the

5    jury decides it's a different set of facts, it's a different

6    kind of case.  I think that is a heavy burden for the

7    government to articulate.

8           At this point I'm going to go ahead and I'm going to

9    deny the motion.  I think you should just move forward and

10   finish up discovery, decide whether or not there is a basis for

11   summary judgment.  We need to get past that.  Then we can

12   decide if there is going to be a trial, whether or not

13   appropriate motions in limine would either limit or focus the

14   proof and the issues for the jury, if we get that far.

15          Based on the complaint itself, consistent with my

16   previous opinion, I think the complaint itself withstands the

17   motion to the extent that the defense motion is that the SEC

18   has failed to state a cause of action, a plausible cause of

19   action, based on the factual allegations in the complaint based

20   on a claim of either primary liability or control liability.

21          Based on the arguments that I have heard today and

22   review of the papers and those reasons, I'm going to deny the

23   motion to dismiss.  I'll issue an order denying the motion for

24   the reasons given and discussed here on the record.  Then we

25   will move forward and see whether or not the facts themselves

1    are consistent and can legitimately sustain the factual

2    allegation as laid out in the original complaint and as amended

3    at this point, as further amended in the amended complaint.

4              That is going to be my ruling.  Go ahead and see how

5    you can expeditiously finish up discovery.  See what you need

6    to do to coordinate the evidence.  If we need to meet before

7    the February 28th date, we will do so.  Otherwise, hopefully

8    you can let me know by that date and time or before that time

9    what would be the next step at the close of discovery, all

10   discovery.  Let's try to finish that up as efficiently as

11   possible.

12             Thank you.

13             (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25